JOHN HENRY GERDES v. RICHARD A. SHEW AND WIFE, IDALORA W. SHEW

No. 68SC114

(Filed 2 April 1969)

**1. Deeds § 24— covenant against encumbrances**

By the covenant against encumbrances a grantor of land gives to his grantee security against any outstanding rights to, or interest in, the land granted which may subsist in third persons to the diminution in value of the estate conveyed, although consistent with passing of the fee.

**2. Deeds § 24— covenant against encumbrances — what constitutes an encumbrance**

An encumbrance, within the meaning of a covenant against encumbrances, is any burden or charge on the land and includes any right existing in another whereby the use of the land by the owner is restricted.

**3. Deeds § 24— action for breach of covenant against encumbrances — defense of knowledge and record notice**

That grantee had actual knowledge and record notice of the existence

of an encumbrance upon the land at the time of purchase does not constitute a defense to grantee's action to recover damages for grantors' breach of covenant against encumbrances contained in the deed of conveyance.

**4. Deeds § 24—  action for breach of covenant against encumbrances — defenses — merger of prior negotiations in deed**

In grantee's action to recover damages for breach of covenants in a deed, grantors may not allege as a defense the plaintiff's failure to comply with provision of written sales contract requiring that grantors should be notified and given opportunity to correct defects in the title, since (1) execution and delivery of the deed containing full covenants establish the extent of the grantors' obligations and (2) it is presumed the prior sales contract and all prior negotiations leading up to the sale became merged in the deed itself insofar as they relate to any matters covered by the covenants.

**5. Contracts § 26—  competency of evidence — prior negotiations — merger**

When the terms of a contract are established, the negotiations which produced the contract cannot enlarge or restrict its provisions and are therefore not competent as evidence in an action to enforce it.

**6. Deeds § 24—  action for breach of covenant against encumbrances — defense of estoppel**

In grantee's action to recover damages for grantors' breach of covenant against encumbrances in a deed, grantors may not assert as a defense the plaintiff's failure to comply with provision of the deed requiring grantor's approval before construction is begun on the premises, since, the defendant's covenant against encumbrances having been breached at the moment of execution and delivery of the deed, the fact that plaintiff may have thereafter violated different provision of the deed would not estop plaintiff from maintaining the action.

**7. Cancellation of Instruments § 4—  mistake of law**

Ordinarily a mistake of law, as distinguished from a mistake of fact, does not affect the validity of a contract.

**8. Deeds § 24;  Cancellation of Instruments § 4—  action for breach of covenant against encumbrances — defense of mutual mistake**

In grantee's action to recover damages arising from grantors' breach of covenant against encumbrances in a deed, grantors may not allege that the deed had been made by them and accepted by plaintiff under a mutual mistake in that prior to the conveyance the parties had obtained legal advice to the effect that the lot in question could be conveyed free from a residential restriction, since this was nothing more than an erroneous conclusion by the parties and their attorneys as to the legal effect of known facts.

ON *Certiorari* to review orders of *Mintz, J.*, November 1967 Session of NEW HANOVER Superior Court.

This is a civil action to recover damages for breach of covenants

in a deed. Plaintiff filed complaint 27 June 1967 alleging: The defendants executed and delivered a deed dated 10 January 1966 conveying certain described real property to the plaintiff. The deed contained covenants of seizen, right to convey, against encumbrances, and warranty of title, but no restrictions as to use of the property. Plaintiff paid defendants $6,500.00 purchase price for the lot and purchased it for the purpose of erecting thereon a dental and medical office building, which purpose was known to the defendants. Plaintiff obtained a construction loan and began clearing the lot for construction of the office building, but was stopped when an action was commenced against him in superior court alleging that the lot was subject to restrictions limiting its use to residential purposes. Plaintiff notified defendants of this action and called upon them to defend title under their warranty, but defendants refused to do so. Plaintiff employed counsel to defend the action, but the trial resulted in a judgment enjoining plaintiff from erecting his office building or otherwise using the property other than for residential purposes, and on appeal the North Carolina Supreme Court affirmed. Plaintiff further alleged that for office building purposes the lot had a fair market value of $6,500.00, but restricted to residential purposes is worth only $1,000.00. Plaintiff prayed to recover damages in the amount of the difference in value of the lot for the two purposes, plus the amount of legal expenses and court costs which had been incurred by him in defending the injunction suit and the costs of the construction loan and expenses paid the building contractor up to the time the suit for injunction had been commenced.

Summons was served upon the defendants on 28 June 1967. On 24 August 1967 defendants filed a motion to strike certain portions of the complaint. On 25 August 1967 plaintiff moved for judgment by default and inquiry. On 21 September 1967 defendants moved for permission to withdraw their motion to strike portions of the plaintiff's complaint and to be allowed to defend the action by filing answer, which motions of defendants were allowed. On 21 September 1967 defendants filed answer, admitting execution and delivery of the deed and that it contained no restrictions as to use of the property, but denying that they had knowledge that the lot was being purchased to erect thereon a medical-dental office building, and denying plaintiff's allegations as to differences in values of the lot when considered for commercial or residential purposes. By way of defense, defendants' answer contained five further answers, in substance as follows: First: That plaintiff had purchased the lot with actual knowledge that it had previously been sold by defendants and repurchased by them subject to restrictions limiting its use. Second:

That the plaintiff had purchased with record notice of the restrictions which were contained in recorded deeds in his chain of title. Third: That plaintiff had purchased under a written contract which provided that if title be found defective by his attorney, the owner should be notified in writing of such defect and given an opportunity to cure the same, but no notice had been given by plaintiff or his attorney to defendants of any defect in the title prior to the time the sale was closed. Fourth: That the deed contained a condition that plans and specifications for any building must be submitted to and approved by defendants, and while plaintiff had submitted plans and specifications for his office building, the same had not been approved. Fifth: That defendants had offered to return the purchase price on reconveyance of the lot to him or to exchange said lot for another of equal value.

On motion of plaintiff the court entered an order dated 17 October 1967 striking portions of the answer and all of the five further answers, and allowing defendants 20 days within which to amend their answer. On 6 November 1967 defendants filed an amended answer to the complaint, containing three further answers and defenses substantially as follows: First: That prior to the conveyance the parties had secured legal advice to the effect that the lot could be conveyed free from any residential restrictions and plaintiff would not have purchased and defendants would not have sold but for their mutual mistake that said lot could be so conveyed; that when the parties discovered their mutual mistake, defendants sought to rescind and offered to pay plaintiff the full purchase price for a reconveyance of the lot or to exchange the lot for another similar lot which would not be subject to residential restrictions, but the plaintiff refused; that defendants are entitled to concellation of their contract and conveyance due to the mutual mistake of the parties as to a material fact, and plaintiff should be ordered to reconvey the lot to defendants upon their paying the plaintiff the purchase price thereof, less the amount of $4,000.00 for damages done to the lot by plaintiff after the date on which defendants had offered to rescind or, in the alternative, defendants are entitled to have their deed reformed to exclude from the covenants therein the existence of residential restrictions upon the lot. Second: That at the time the parties had conferred with regard to sale of the lot to plaintiff for the construction of a small dental office, plaintiff agreed to construct a building of residential type, and as a means of enforcing said agreement there had been placed in the deed a restriction that no building be erected until plans and specifications therefor shall have been first presented to and approved by the grantors; that the plaintiff submitted plans

for a large office building, which plans were for a building materially different from that which the plaintiff had agreed to construct; that the plans were not approved, but notwithstanding such disapproval the plaintiff violated the restriction and began construction of a large medical-dental office building; and that any damages plaintiff may have suffered are the sole result of his own material breach of said agreement. Third: That if defendants are liable to plaintiff for any breach of any covenant in their deed, the amount of plaintiff's recovery should be reduced by the amount the fair market value of the lot has been reduced by reason of acts done by plaintiff in cutting trees and pouring concrete thereon after the date the defendants had offered to rescind. In their answer, defendants prayed for judgment canceling their deed to plaintiff upon their return of the purchase price, less the amount of $4,000.00 damages done to the lot, or, in the alternative, that the deed be reformed due to the mutual mistake of the parties.

The plaintiff moved to strike from the amended answer the three further answers and defenses in their entirety. By order dated 15 November 1967 the court struck all of the second further answer and substantially all of the first and third further answers.

Defendants petitioned for writ of certiorari to review the orders of the superior court striking out their further answers and defenses from their original answer and from their amended answer, which petition was allowed by the Court of Appeals.

*Marshall and Williams, by Lonnie B. Williams, for plaintiff appellee.*

*Douglas P. Connor for defendant appellants.*

PARKER, J.

[1, 2]   By the covenant against encumbrances a grantor of land gives to his grantee security against any outstanding right to, or interest in, the land granted which may subsist in third persons to the diminution in value of the estate conveyed, although consistent with passing of the fee. An encumbrance, within the meaning of such a covenant, is any burden or charge on the land and includes any right existing in another whereby the use of the land by the owner is restricted. 21 C.J.S., Covenants, § 42, p. 914. In the present case defendants have admitted execution and delivery by them of a deed conveying real property to plaintiff with a full covenant against encumbrances and that there was no exception therefrom for any restriction limiting use of the property to residential purposes. De-

fendants have also admitted that after receiving their deed, plaintiff had been enjoined from erecting an office building on the land conveyed, or from making any use of the property other than residential, and that judgment in the injunction proceeding had been affirmed by the North Carolina Supreme Court. Reference to the opinion in that case, reported in *Lamica v. Gerdes,* 270 N.C. 85, 153 S.E. 2d 814, reveals that at the time defendants executed and delivered their warranty deed to the plaintiff, the property was subject to a legally enforceable restrictive covenant limiting its use to residential purposes. By reason of the existence of such restriction, defendants' covenant against encumbrances was violated at the moment they executed and delivered their deed, entitled the covenantee to recover damages, which are generally to be based upon the impairment of the market value of the land by reason of the existence of the restriction. Annotation, 61 A.L.R. 10, 75; 100 A.L.R. 1194, 1199. The question presented for our decision on this appeal is whether any of the matters alleged in defendants' several further answers constitute legal defenses to plaintiff's action for the breach of their covenant.

[3] In the first two further answers, as filed with defendants' original answer, it is alleged that plaintiff had actual knowledge and had record notice of the existence of the restriction at the time he purchased. These allegations, even if proved, would not avail defendants as a defense.

> "As a general rule, encumbrances which affect or relate to the title to land or the record thereof are included in the covenant against encumbrances, regardless of the knowledge of the grantee at the time he took the conveyance of the land. Such a covenant embraces encumbrances which are unknown to the purchaser or the vendor, as well as those which are known. Both parties may be in possession of all the facts, and either or both may believe that an encumbrance is not an encumbrance; nevertheless, if the apparent encumbrance turns out to be real in character, the seller is responsible, unless he specifically excepts the encumbrance from his covenant. The reason has been advanced, in support of the general rule, that the covenantee in many instances may insist upon the covenant for the express purpose of guarding against encumbrances which he knows exist. Another theory enunciated in support of the rule is that a contrary view would be open to the objection that it would substitute the uncertainties of oral testimony for the certainty which should normally inhere in written contracts." 20 Am. Jur. 2d, Covenants, § 84, p. 648.

An early North Carolina case is in accord with this general rule. In *Gragg v. Wagner,* 71 N.C. 316, it is said:

"A conveys to B a tract of land with a covenant against encumbrances, both parties, at the time, having full knowledge of the existence of valid outstanding encumbrances upon the land conveyed: Can B recover upon the covenant? There is no allegation of fraud or mistake in procuring the covenants, and therefore, any oral evidence offered in the case, would fall under the general rule that it shall not be admitted to contradict, alter or vary, the written agreement of the parties. If there are known encumbrances, and it is the object of the vendor to except them from the operation of the covenant, it is always in his power to make it appear so on the face of the deed; and if he fails to do so, it is his own folly, and he will not be allowed to repair the error at the expense of the settled rules of construction which have become a part of the laws of property.

"The principle is *caveat emptor*, and therefore, if the vendee fails to investigate the title or take covenants, he is bound by the defect of title and must bear the loss; but if he, with ordinary prudence, protects himself by proper covenants, the vendor is then bound to indemnity. Thus the vendor must take care of the covenants he enters into, and notice of the encumbrance can make no difference, as was decided in *Lait v. Witherington*, Luter. 317."

There was no error in striking the first two further answers from the original answer.

**[4, 5]**    The third further answer alleged the provisions of the written sales contract under which plaintiff had purchased and which, in substance, provided that upon approval of title by purchaser's attorney, the owners would convey by warranty deed with covenants of seizen, right to convey, and freedom from encumbrances; but if the title should be found defective by such attorney, the owners would be notified in writing and given an opportunity to correct the defect, failing which the down payment should be returned to the purchaser. Defendants allege that at no time prior to receipt of the deed from them did plaintiff notify defendants of any defect in title, and assert that because of the terms of the contract and plaintiff's failure to give such notice, plaintiff is now estopped to assert the defect. Acceptance of this argument would render completely meaningless all of the covenants in defendants' deed. If defendants did not mean to be bound by their covenants, they should not have included them in their deed. Execution and delivery of the deed containing full covenants established the extent of their obligations thereunder. It is presumed that the prior sales contract and all prior

negotiations leading up to closing of the sale, insofar as they related to any matters covered by the covenants in defendants' deed, became merged in the deed itself. "When the terms of a contract are established, the negotiations which produced the contract cannot enlarge or restrict its provisions and are therefore not competent as evidence in an action to enforce it." *Bank v. Slaughter,* 250 N.C. 355, 108 S.E. 2d 594. There was no error in striking the third further answer from the original answer.

**[6]**   The fourth further answer as filed with the original answer contained allegations concerning the provisions in the deed given plaintiff which provided that no building should be erected on the premises until the plans and specifications thereof shall have been first presented to and approved by the grantors. Defendants alleged that while plaintiff had submitted plans and specifications, the same had not been approved by the defendants and that plaintiff had attempted to go forward with construction of his office building nevertheless. Defendants assert that for this reason plaintiff is estopped to maintain his action. As noted above, however, defendants' covenant against encumbrances was breached by them at the moment they executed and delivered their deed. The fact that the plaintiff may have thereafter violated a completely different provision of the deed would not estop plaintiff from maintaining his action for breach of the defendants' covenant, and the motion to strike the fourth further answer from the original answer was properly allowed. Defendants have alleged essentially the same facts as to the requirement for prior submission and approval of plans and specifications in their second answer filed with their amended answer, with the additional allegation that at the time the parties had conferred with regard to sale of the lot to plaintiff "for the construction of a small dental office, the plaintiff agreed to construct a building of residential type . . ." and that plaintiff had breached this agreement when he attempted instead to erect a large office type building. What was said above concerning merger of any prior negotiations and agreements into the written provisions of the deed itself, is equally applicable here. Even had there been such an agreement as defendants allege, it would not free them from liability for breach of their own covenant, and the facts alleged in defendants' second further answer filed with its amended answer would not constitute a defense to plaintiff's action. The motion to strike such second answer was therefore properly allowed.

**[7, 8]**   The defendants allege in their first further answer filed with their amended answer that the deed had been made by them and accepted by plaintiff under a mutual mistake in that prior to

the conveyance the parties had sought and obtained legal advice to the effect that the lot could be conveyed free from the residential restriction. Even so, this was nothing more than an erroneous conclusion by the parties and their attorneys as to the legal effect of known facts. "(T)his is a mistake of law and not of fact, and the rule is that ordinarily a mistake of law, as distinguished from a mistake of fact, does not affect the validity of a contract." *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488. In *Roberson v. Penland,* 260 N.C. 502, 133 S.E. 2d 206, the North Carolina Supreme Court followed this long established principle. In that case the grantors of a warranty deed sought to set it aside on the grounds that at the time it had been given all parties acted under the belief, later found to be mistaken, that the legislative act granting a widower the right to dissent from his wife's will was valid. In an opinion written by Higgins, J., the Court said:

> "It is settled that mere ignorance of law, unless there is some fraud or circumvention, is not a ground for relief in equity whereby to set aside conveyances or avoid the legal effect of acts which have been done. *Foulkes v. Foulkes,* 55 N.C. 260. . . . In this case the rights of the parties are fixed by solemn warranty deed and consent judgment. These may not be set aside merely because eminent lawyers are unable to anticipate that this Court would strike down the Act of the General Assembly which permitted the dissent."

The case of *MacKay v. McIntosh,* 270 N.C. 69, 153 S.E. 2d 800, is distinguishable. In that case the defendant resisted specific performance of a contract by which she had agreed to purchase real property from plaintiff on the grounds that it had been the intention of plaintiff's sales agent to sell and intention of defendant to purchase only land zoned for business; that the contract was entered into by defendant as result of an innocent misrepresentation of plaintiff's agent to the effect that the property was zoned for business, whereas in fact it was not so zoned. The Court, in an opinion by Bobbitt, J., said: "In our opinion, and we so hold, whether the subject property was within the boundaries of an area zoned for business is a factual matter; and, under the evidence, the mutual mistake as to this fact related to the essence of the agreement." The Court cited 17 Am. Jur. 2d, Contracts, § 143, p. 490, to the effect that a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. In the case presently before us the parties did exactly what they intended to do. That they acted under a mistaken understanding as to the legal effects of the resi-

dential restrictions contained in prior deeds in their chain of title, does not entitle either party to avoid the contract. There was no error in striking the first further answer from the amended answer.

The fifth further answer to the original answer and the third further answer to the amended answer are both based on the theory that defendants had the right to rescind. They assert that since plaintiff refused to accept their offer to rescind, he is estopped to collect any damages thereafter accruing. However, defendants had no right to rescind their deed and their further answers predicated upon the existence of such a right were properly stricken.

In this appeal we are not called upon to decide, and do not express an opinion, as to the correct measure of any damages plaintiff may be entitled to recover. For collection of cases on that question, see Annotation in 61 A.L.R. 10, supplemented in 100 A.L.R. 1194.

The orders of the superior court striking defendants' five further answers from their original answer and striking all of their second further answer and substantially all of their first and third further answers from their amended answer, are

Affirmed.

MALLARD, C.J., and BROCK, J., concur.