VERNON R. WHETSELL, EUGENE HOLLOMAN & R. E. HATCH, TRUSTEES OF SALEM ADVENT CHRISTIAN CHURCH (SUCCESSOR TO THE SECOND ADVENT BAPTIST CHURCH) v. GLADYS L. JERNIGAN & HUSBAND, ROLAND R. JERNIGAN

No. 42

(Filed 4 November 1976)

1. Deeds §§ 12, 15— 1884 deed — reversion clause after description — ineffectiveness

A clause in an 1884 deed providing for reverter of title to the grantors is not valid and effective when it appears only at the end of the description and is not referred to elsewhere in the deed.

2. Deeds § 12— inconsistent clauses in deed — construction — conveyance after 1 January 1968 — effect of G.S. 39-1.1

Conveyances executed after 1 January 1968 in which there are inconsistent clauses shall be construed in accordance with G.S. 39-1.1 so as to effectuate the intent of the parties as it appears from all the provisions of the instrument so long as such construction does not prevent the application of the rule in Shelley's case; however, G.S. 39-1.1 does not apply to conveyances executed prior to 1 January 1968, and such conveyances will be construed in accordance with the principles enunciated in *Artis v. Artis*, 228 N.C. 754 and *Oxendine v. Lewis*, 252 N.C. 669.

Justice COPELAND dissenting.

ON petition for discretionary review of the decision of the Court of Appeals, reported in 29 N.C. App. 136, 223 S.E. 2d 397 (1976), which reversed the summary judgment for defendant entered by *Griffin, J.*, at the September 1975 Regular Session of WAYNE Superior Court.

Plaintiffs, trustees of Salem Advent Christian Church, brought this action to have the church declared the sole owner of a one-acre lot conveyed by deed dated 17 November 1884 from D. E. Newell and wife, Nancy Newell, and Mary Newell

Whetsell v. Jernigan

to the Second Advent Baptist Church. Plaintiffs alleged that the church is the successor to the original grantee, Second Advent Baptist Church.

Defendants claim ownership under a clause in the 1884 deed which appears to be a part of the description:

". . . thence north 70 yards to the begin., containing one acre more or less—*Now the condition of th's deed is that if the said denomination of the Second Advent Baptist Church fail to build a church house, or if said denomination change their name, or if they fail to occupy said land with a church for a space of three years then said land is to return back to the parties of the first part or their legal representatives.*" (Emphasis added.)

The granting clause in the deed conveyed an unqualified fee and the *habendum* contains no limitation on the fee thus conveyed and a fee simple title is warranted in the covenants of title. The italicized portion of the description does not appear and is not referred to in any other part of the deed.

Defendants alleged that around 1969 Second Advent Baptist Church changed its name to Salem Advent Christian Church and that the Salem Advent Christian Church has failed to occupy the land with a church for a period of three years. These facts do not appear to be controverted.

Each party filed a motion for summary judgment. After a hearing and argument by counsel for both parties, the trial judge concluded that the language imposing conditions on the conveyance was legally effective and imposed certain conditions on the title conveyed by the deed. The trial judge further found that the grantee, Salem Advent Baptist Church, had breached the conditions imposed and therefore defendants were entitled to entry and possession of the lot. He further concluded that title vested in Gladys Jernigan, sole heir of the grantor, and thereupon entered summary judgment for defendants.

Plaintiffs appealed and the Court of Appeals reversed. We allowed petition for discretionary review on 9 April 1976.

*Kornegay, Bruce & Rice by G. R. Kornegay, Jr., and Robert T. Rice for plaintiff appellees.*

*Smith, Everett & Womble by James N. Smith and James D. Womble, Jr., for defendant appellants.*

MOORE, Justice.

[1]	The sole question for decison is whether a clause in a deed providing for a reverter of title to the grantors is valid and effective when it appears only at the end of the description and is not referred to elsewhere in the deed. The Court of Appeals held that it was not effective. We agree.

In *Artis v. Artis*, 228 N.C. 754, 47 S.E. 2d 228 (1948), the plaintiff claimed title to certain land under a deed in which the granting clause conveyed a fee simple and the *habendum* and warranty clauses were in accord. However, following the description in the deed, a clause appeared which plaintiff contended gave defendant a life estate and not a fee in a certain piece of land. The Court held that a fee was conveyed. In so holding, the following rule was stated:

> "Hence it may be stated as a rule of law that where the entire estate in fee simple, in unmistakable terms, is given the grantee in a deed, both in the granting clause and *habendum,* the warranty being in harmony therewith, other clauses in the deed, repugnant to the estate and interest conveved, will be rejected." 228 N.C. at 761, 47 S.E. 2d at 232.

In arriving at the rule, the Court reviewed much of the prior law relating to the construction of deeds which contained contradictory clauses. In *Blackwell v. Blackwell,* 124 N.C. 269, 32 S.E. 676 (1899), the Court formulated the rule that the essence of the deed is the granting clause and that when two clauses in a deed are repugnant to each other, the clause appearing first in a deed shall control the interpretation of the deed. The reason for this rule was enunciated in *Rowland v. Rowland,* 93 N.C. 214 (1885), in which it was stated that once an estate was vested in a grantee by the premises or the granting clause of a deed, a later clause could not divest the grantee of the first estate conveyed. *See also* 2 W. Blackstone, Commentaries 298 (Christian ed. 1794).

The rule stated in *Artis* has been applied in numerous subsequent decisions of this Court. *See, e.g., Oxendine v. Lewis,* 252 N.C. 669, 114 S.E. 2d 706 (1960); *Whitson v. Barnett,* 237 N.C. 483, 75 S.E. 2d 391 (1953); *Jeffries v. Parker,* 236 N.C. 756, 73 S.E. 2d 783 (1953); *Pilley v. Smith,* 230 N.C. 62, 51 S.E. 2d 923 (1949).

In *Oxendine v. Lewis, supra,* certain property was conveyed to Malinda Hunt. The deed of conveyance contained a granting clause which conveyed a fee, and the *habendum* and warranty portions of the deed were in harmony with the granting clause. At the beginning of the description of the deed, it appeared that Malinda was conveyed "[a] life estate in and to the following described tract of land. . . ." At the end of the description the following clause appeared:

> " 'It is distinctly understood between the parties of the first part and the party of the second part that the said Malinda Oxendine Hunt is to have a lifetime right and full control of the possession of the property herein conveyed, and the remainder, subject to said lifetime right, is retained by Roy Oxendine.' "

The Court held that under the decisions of *Artis v. Artis, supra, Jeffries v. Parker, supra,* and other cases, the words appearing in the description were not sufficient to limit the unqualified fee conveyed by the granting clause when the *habendum* contained no limitation on the fee therein conveyed and a fee simple title was warranted in the covenants of title. The Court then quoted from *Jeffries v. Parker, supra,* at 673, 114 S.E. 2d at 709:

> " '. . . This is now settled law in this jurisdiction. *Krites v. Plott,* 222 N.C. 679, 24 S.E. 2d 531 [1943], and *Jefferson v. Jefferson,* 219 N.C. 333, 13 S.E. 2d 745 [1941], to the extent they conflict with this conclusion, have been overruled.' "

The defendants in the case at bar contend that although the rule in *Artis v. Artis, supra,* exists, this Court should not follow it. Rather, defendants argue that the principles stated in *Triplett v. Williams,* 149 N.C. 394, 63 S.E. 79 (1908), should control. In *Triplett,* the premises and the granting clause conveyed fee simple title. The *habendum,* however, limited the grantee to a life estate with the remainder going to the grantee's children. This Court held that a life estate was created.

In reaching its conclusion, the Court reasoned that the *habendum* clause in a deed may enlarge or restrict the estate conveyed by the granting clause and that the two clauses were not repugnant to each other. The Court then went on, in dictum, to state that the intention of the grantor should be ascertained

from the entire instrument in those cases where the clauses in a deed are contradictory.

We do not feel, however, that *Triplett* is controllng in the case at bar. In *Triplett,* the limitation upon the estate granted was contained in the *habendum.* The reason for the *habendum* in a deed is to "define the extent of ownership in the thing granted to be held and enjoyed by the grantee . . . to lessen, enlarge, explain, or qualify the estate granted in the premises . . . but not to contradict or be repugnant to the estate granted therein. . . ." *Bryant v. Shields,* 220 N.C. 628, 632, 18 S.E. 2d 157, 159 (1942).

Two cases cited by defendants, *Mattox v. State,* 280 N.C. 471, 186 S.E. 2d 378 (1972), and *Lackey v. Board of Education,* 258 N.C. 460, 128 S.E. 2d 806 (1963), are to the same effect. In *Mattox,* a lengthy condition subsequent was set out in the *habendum.* In *Lackey,* a reverter clause followed both the description and the *habendum.* Thus, these cases are distinguishable from the conveyance in the case at bar which had no qualifying clause in the *habendum.*

Were it not for the decisions in *Artis v. Artis, supra,* and *Oxendine v. Lewis, supra,* and cases cited therein, and had the General Assembly not addressed itself to this problem by passing G.S. 39-1.1, we would be inclined to agree with defendants that the deed in this case should be construed to effectuate the apparent intention of the grantors, and that title should revert to the heirs of the grantors. However, by the adoption of G.S. 39-1.1, the legislators, in their wisdom, provided that the existing law only be changed as to conveyances executed after 1 January 1968. G.S. 39-1.1 provides:

> "(a) In construing a conveyance executed after January 1, 1968, in which there are inconsistent clauses, the courts shall determine the effect of the instrument on the basis of the intent of the parties as it appears from all of the provisions of the instrument.

> "(b) The provisions of subsection (a) of this section shall not prevent the application of the rule in Shelley's case."

By the enactment of this statute, the General Assembly clearly indicated its intention to leave the law relating to conveyances executed prior to 1 January 1968 unchanged and that

the rule as stated in *Artis v. Artis, supra,* and *Oxendine v. Lewis, supra,* should remain in effect for conveyances executed prior to that date. Granting that this rule may occasionally subvert the real intention of the grantor, these particular instances of hardship can better be endured than the uncertainty and confusion of titles resulting from sudden and radical changes in well settled rules of property.

As Chief Justice Shepherd said in *Starnes v. Hill,* 112 N.C. 1, 18, 16 S.E. 1011, 1016 (1893), quoting from Fearne, Contingent Remainders and Executory Devises 171 (Butler ed. 1862) :

> " 'Certain established maxims as to the legal import and effect of technical expressions will render the decisions of title to property as little dependent as the nature of things will admit upon the occasional opinion, humor, ingenuity or caprice of the judge, and are therefore the most proper and sure grounds for titles to rest and depend upon. Titles so founded may be easily and clearly ascertained, and under them a permanent peaceful enjoyment may be expected.' "

**[2]** By the passage of G.S. 39-1.1, it would appear that "[i]t is the legislative will that the intention of the grantor and not the technical words of the common law shall govern." *Triplett v. Williams, supra,* at 398, 63 S.E. at 80. *See also* Comment, 4 Wake Forest Intra. L. Rev. 132 (1968). Thus, we are of the opinion that so long as it does not prevent the application of the rule in Shelley's case, conveyances executed after 1 January 1968 in which there are inconsistent clauses shall be construed in accordance with G.S. 39-1.1 so as to effectuate the intent of the parties as it appears from all the provisions in the instrument. However, we hold that G.S. 39-1.1 does not apply to conveyances executed prior to 1 January 1968 and that such conveyances will be construed in accordance with the principles enunciated in *Artis v. Artis, supra,* and *Oxendine v. Lewis, supra.* Hence, in present case, the clause inserted after the description in the conveyance which tends to delimit the estate will be deemed mere surplusage without force or effect.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.

Whetsell v. Jernigan

Justice COPELAND dissenting.

The majority concedes that its decision in this case will thwart the grantor's apparent intent and further indicates that it would be inclined to disavow its rule laid down in *Artis v. Artis,* 228 N.C. 754, 47 S.E. 2d 228 (1948) and extended in *Oxendine v. Lewis,* 252 N.C. 669, 114 S.E. 2d 706 (1960), were it not for the legislature's passage of G.S. 39-1.1. The majority's interpretation of the legislature's prospective application of G.S. 39-1.1 as an approval of the *Artis-Oxendine* rule is purely speculative.

The majority's concern that land titles remain stable is certainly respectable but should not be taken to extremes. First of all, to revere the *Artis-Oxendine* rule as one of North Carolina's "well settled rules of property" which should not be tampered with is unjustified. Our Court has reversed itself on this issue within the last thirty-five years, seemingly unmindful of the effect on land titles. In *Jefferson v. Jefferson,* 219 N.C. 333, 13 S.E. 2d 745 (1941) and *Krites v. Plott,* 222 N.C. 679, 24 S.E. 2d 531 (1943), we recognized grantor's intent as drawn from the four corners of the instrument only to return in *Artis v. Artis* to a harsh technical rule. The majority appears implicitly, if not explicitly, to agree that the *Artis-Oxendine* rule is a bad rule in that it frustrates grantor's intent. Following the majority's reasoning, any inequitable rule of property law once pronounced must be upheld *ad infinitum* because of the sanctity of land titles or until the legislature rectifies our mistakes.

More importantly, the notion that admittedly arbitrary rules once laid down should be preserved for the sake of stable land titles should only be applied to technical rules that serve some justifiable social purpose. I submit that the reason our Court has vacillated on this rule in the past and the reason the legislature has acted to curb this rule is that it furthers no useful social purpose. The majority opinion notably lacks any mention of a policy reason supporting the rule, but points only to the policy behind keeping the existing rule intact once it has been handed down for better or for worse. When the relevant policy considerations are examined they cut in favor of an abandonment of the *Artis-Oxendine* rule. *See* Webster, *Doubt Reduction Through Conveyancing Reform—More Suggestions in the Quest for Clear Land Titles,* 46 N.C. L. Rev. 284, 295-96 & n. 42 (1968).

Whetsell v. Jernigan

Apparently, North Carolina was at one time recognized as a leader of the "modern" and now majority view giving preference to the intention of the partes as gleaned from the four corners of the deed. Note, *Deeds—Construction—Use of Fee Simple Form Versus Intent to Convey Life Estate*, 39 N.C. L. Rev. 283, 284 & n. 9 (1961). The rationale behind the "modern view" notes that a rule favoring certain clauses of a deed over other clauses is not a rule of property but merely a rule of construction which should be resorted to when the court *cannot* determine which of the clauses the grantor intended to be controlling. *See* 84 A.L.R. 1054, 1063-64 (1933). What this Court has done is to convert into a rule of law what should be a rule of construction, providing at most a presumption in favor of the estate described in the formal clauses.

While it is true that most of the cases which call for the grantor's intent to prevail where it can be determined, address conflicts between the granting and habendum clauses and not conflicts between those clauses and the description in the deed, our Court has not suggested a reason why the rule should be different in the two conflict situations. *See* 58 A.L.R. 2d 1374, 1393 (1958) ; 84 A.L.R. 1054, 1063 (1933). Certainly the language of our own cases and those of other jurisdictions is broad enough to encompass any conflict among clauses in a deed concerning the extent of the estate conveyed. In *Triplett v. Williams,* 149 N.C. 394, 397-98, 63 S.E. 79, 80 (1908), which has yet to be overruled, we said:

> " 'Words deliberately put in a deed, and inserted there for a purpose, are not to be lightly considered, or arbitrarily thrust aside.'

> "To discover the intention of the parties 'is the main object of all constructions. When the intention of the parties can be ascertained, nothing remains but to effectuate that intention.'

> "We can see no reason why the manifest intention of the grantor should be so carefully regarded in determining what property his deed covers and so entirely disregarded in determining what estate in that property the grantee shall take.

> " 'The inclination of many courts at the present day is to regard the whole instrument without reference to formal divisions. The deed is so construed, if possible, as to give

effect to all its provisions, and thus effectuate the intention of the parties. When an instrument is informal, the interest transferred by it depends not so much upon the words and phrases it contains as upon the intention of the parties as indicated by the whole instrument.' " [Citations omitted.] *See Mattox v. State,* 280 N.C. 471, 186 S.E. 2d 378 (1972) ; *Lackey v. Board of Education,* 258 N.C. 460, 128 S.E. 2d 806 (1963).

Although we may distinguish *Triplett v. Williams* by limiting it to its facts, a conflict between a habendum and a granting clause, differences in treatment should be based on substantive distinctions.

There can be no doubt as to what the grantor intended when he placed his reverter clause in the present deed. To place the grantor in a straightjacket and say that he must put his reverter clause at a particular place in the deed is to make a sham of the law. To say that we must continue the *Artis-Oxendine* rule because it might upset titles in North Carolina is to decide this case on the basis of an unfounded fear, given that our recent change in the rule precipitated no such disastrous consequences. Moreover, I cannot conceive of an attorney unconditionally passing title on property with the words that are included in this deed, regardless of where they are inserted.

The General Assembly expressed its concern over this Court's rule by enacting G.S. 39-1.1. Justice Bobbitt (later Chief Justice) and the late Justice Rodman, eminent scholars in the field of real property law, voiced their displeasure at the extension of this rule in *Oxendine, supra.* Clearly, the polar star should always be the grantor's intent and this can be determined only by examining the deed from its four corners.

For these reasons, I would reverse the Court of Appeals and respectfully dissent.