THOMAS HOUSTON ROBINSON; JAMES H. ROBINSON AND WIFE, SARAH M. ROBINSON; HENRY HOUSTON ROBINSON AND WIFE, CAROLYN M. ROBINSON; NELL ROBINSON SUMMERS AND HUSBAND, FOSTER SUMMERS; ETHEL ROBINSON BUTLER AND HUSBAND, JOSEPH H. BUTLER; JESSIE B. SNYDER AND HUSBAND, ROBERT L. SNYDER; LYNN ROBINSON HALLMAN AND HUSBAND, NEY M. HALLMAN; MARGARET ROBINSON SISTARE AND HAZEL ROBINSON v. JOHN EDWIN KING AND WIFE, SARAH E. KING; ANNIE LOUISE KING; MARGARET EVELYN KING; MELVIN T. GRAHAM AND WIFE, PEGGY T. GRAHAM; JOHN H. ROBINSON AND WIFE, LENA S. ROBINSON; SAM ROBINSON AND WIFE, KATHLEEN W. ROBINSON; ROBERT FRANKLIN ROBINSON AND WIFE, JOYCE ROBINSON; AND WILLIAM M. ROBINSON AND MARY ROBINSON FARLESS AND OSSIE McMANUS AND LAURA KING ROBINSON

No. 8320SC423

(Filed 1 May 1984)

Deeds § 12— construction of deed—conflicting provisions in granting clause and habendum

Where the granting clause of a 1924 quitclaim deed gave all "right, title and interest" in land to the grantee but contained no words of inheritance, and the habendum gave the grantee the land "for and during the term of her natural life," the deed conveyed only a life estate to the grantee under both the common law and G.S. 39-1.

APPEAL by defendants from *Davis, Judge.* Judgment entered 18 February 1983 in Superior Court, UNION County. Heard in the Court of Appeals 8 March 1984.

Plaintiffs sought a judgment declaring their interest in 147 acres of Union County land. The land was previously owned in fee by James Pickens Robinson, who died on 14 April 1924. James Pickens Robinson had attempted on 27 March 1922 to make a will, handwritten by someone else, which stated:

To my sister Maggie Robinson I bequeath [sic] all my real estate; also all of my personal property, except my mules (which are to aid in the support of her and the sister's children in her charge) which I will to C. P. Robinson.

I also request ten dollars ($10.) each to my four brothers; an [sic] ten dollars ($10.) each to the sister's three children.

I do not want my sister under any bond, and she is to use the said property her lifetime as she desires.

The will was never probated.

James Pickens Robinson's four brothers jointly executed two documents on 17 April 1924, three days after his death. One document expressed the brothers' desire to waive their intestate succession rights to James Pickens Robinson's estate in favor of their sister, Maggie Robinson, to the extent provided in the aforementioned will. It provided:

> KNOW ALL MEN BY THESE PRESENTS, That we, C. P. Robinson, R. D. Robinson, W. W. Robinson and C. C. Robinson brothers and heirs-at-law of J. P. Robinson, deceased, of the County of Union, State of North Carolina, for valuable consideration, hereby waive all our right, title and interest in and to the property constituting the estate of the said J. P. Robinson, deceased, except such as bequeathed to us under the last will and testament of the said J. P. Robinson, deceased, dated the 27th day of March, 1922; said waiver is in favor of the principal legatee under said will, to wit; Maggie Robinson, sister of said deceased.
>
> We further hereby consent that such will shall be admitted to probate and the property distributed, as provided under the terms thereof. We also further agree to make good and sufficient deed of conveyance to the said Maggie Robinson of all our right, title and interest in the real estate of which the said J. P. Robinson died seized. Witness our hands and seals this 17th day of April, 1924.

The other document was a quitclaim deed from the four brothers and their wives, which conveyed their interest in the land formerly owned by James Pickens Robinson to Maggie Robinson in consideration of forty dollars, which was the total monetary amount that was to be bequeathed to the four brothers under the attempted will. The granting clause of the quitclaim deed, standing alone, appears to give Maggie Robinson a fee simple, while the habendum clause, standing alone, appears to give her a life estate. The deed provided:

> Know all men by these presents, that we, C. P. Robinson, R. D. Robinson and wife, Ellie Robinson, W. W. Robinson and wife Hattie Robinson, C. C. Robinson and wife, Luka Robinson, all of the County of Union in the State aforesaid, for and

in consideration of the sum of Forty Dollars to be paid under the terms of the last Will and Testament of J. P. Robinson, deceased to us in hand paid at and before the sealing of these presents by Maggie Robinson, of the County of Union, in the state aforesaid the receipt whereof is hereby acknowledged, *have granted, bargained, sold and released, and by these presents do bargain, sell and release unto the said Maggie Robinson all our right, title and interest in and to all that piece, parcel or tract of land* with the buildings and improvements thereof in Jackson Township, in said County and State, containing One Hundred and Forty-four (144) acres, more or less, bounded on the North by lands of W. W. Robinson; on the East by lands of A. W. Heath & Company; on the South by lands of C. C. Robinson and on the West by lands of J. W. Morrison, the land herein conveyed is known as the home place of J. P. Robinson, deceased.

TOGETHER with all and singular, the rights, members, hereditaments and appurtenances to the said premises belonging, or in any wise incident or appertaining.

*TO HAVE AND TO HOLD, all and singular, the said premises before mentioned, unto the said Maggie Robinson, for and during the term of her natural life.*

And we do hereby bind ourselves our heirs and executors and administrators, to warrant and forever defend, all and singular, the said premises unto the said Maggie Robinson, our heirs and assignz [sic], against us and our heirs and all other persons lawfully claiming or to claim the same, or any part thereof.

WITNESS our hands and seals this 17th day of April, in the year of our Lord, one thousand nine hundered [sic] and *Twenty-four, and in the one hundred and forty-eight year of* the Sovereignty and Independence of the United States of America. (Emphasis supplied.)

The waiver agreement and the quitclaim deed were simultaneously recorded on 2 June 1924.

Plaintiffs argue that the quitclaim deed passed only a life estate to Maggie Robinson, thereby leaving a reversion to the heirs of James Pickens Robinson. Those heirs include the plain-

tiffs. Defendants respond that the quitclaim deed passed a fee simple to Maggie Robinson. Defendants, who are the heirs of Maggie Robinson and their assignees, would have acquired all rights to the land in question under Maggie Robinson's will if she had owned a fee simple.

Defendants presented evidence that Maggie Robinson thought she owned the land in fee simple. In 1957 and again in 1966 she sold timber and pulpwood from the property. She executed a will in 1946 which devised the land to a nephew and two nieces, her predeceased sister's children whom she had reared. That will was admitted to probate after Maggie Robinson's death in 1980.

Three of James Pickens Robinson's four brothers died intestate. The fourth executed a detailed will, admitted to probate in 1953, which made no mention or disposition of a reversionary interest in the James Pickens Robinson land.

The trial court granted summary judgment for plaintiffs, adjudging that Maggie Robinson acquired only a life estate under the quitclaim deed. Defendants appeal.

*Dawkins, Glass & Lee, by W. David Lee, for plaintiff appellees.*

*Clark & Griffin, by Bobby H. Griffin and Richard S. Clark, for defendant appellants.*

WHICHARD, Judge.

## I. Applicable Law

The rights of the parties depend upon whether the quitclaim deed to Maggie Robinson conveyed a life estate or a fee simple. The deed is ambiguous. The granting clause gives all right, title, and interest to Maggie Robinson, while the habendum clause gives her the land "for and during the term of her natural life."

Ambiguous deeds traditionally have been construed by the courts according to rules of construction, rather than by having juries determine factual questions of intent. The current governing rule is as follows:

> In construing a conveyance executed after January 1, 1968, in which there are inconsistent clauses, the courts shall

determine the effect of the instrument on the basis of the intent of the parties as it appears from all of the provisions of the instrument.

G.S. 39-1.1(a). The quitclaim deed to Maggie Robinson was executed in 1924, however, and G.S. 39-1.1 thus is inapplicable.

*Whetsell v. Jernigan*, 291 N.C. 128, 133, 229 S.E. 2d 183, 187 (1976) and *Frye v. Arrington*, 58 N.C. App. 180, 182, 292 S.E. 2d 772, 773 (1982), held that deeds executed prior to 1 January 1968 would be construed according to the common law rules. *Whetsell* specifically stated that the principles enunciated in *Artis v. Artis*, 228 N.C. 754, 47 S.E. 2d 228 (1948), and *Oxendine v. Lewis*, 252 N.C. 669, 114 S.E. 2d 706 (1960), would control the construction of such deeds.

This Court must look beyond the principles enunciated in the *Whetsell, Artis*, and *Oxendine* cases, however. Those cases all held that where the granting clause gave an unqualified estate in fee simple, the habendum contained no limitation on the fee, and fee simple title was warranted in the covenants, inconsistent clauses elsewhere in the deed would be rejected. This rule, which is an aberration from earlier common law, has no application here, since it is the granting and habendum clauses in the deed here which appear inconsistent.

The rules of construction applicable here are found in G.S. 39-1 and *Triplett v. Williams*, 149 N.C. 394, 63 S.E. 79 (1908). Pursuant to these authorities, we affirm the summary judgment for plaintiffs.

## II. G.S. 39-1

G.S. 39-1 states:

When real estate is conveyed to any person, the same shall be held and construed to be a conveyance in fee, whether the word "heir" is used or not, *unless such conveyance in plain and express words shows, or it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an estate of less dignity.* (Emphasis supplied.)

This statute has been in effect, with minor and immaterial revision, since 1879. It thus applies to the deed under consideration. The grant to Maggie Robinson did not give her an estate of in-

heritance by use of the word "heir"; the conveyance did contain plain and express words showing the grantors' intent to give her an estate "for and during the term of her natural life." Under G.S. 39-1, the absence of words of inheritance, combined with the presence of language limiting the estate to the term of the grantee's life, should be interpreted to convey a life estate.

This result has been reached in other jurisdictions where a grant "to A," which standing alone would convey a fee, has been held to convey a life estate when the granting clause is accompanied by a habendum clause which refers to a life estate. *See* 4 H. Tiffany, *The Law of Real Property* § 980 (3d ed. 1975). Such a construction does not violate the rule of *Whetsell, supra, Oxendine, supra,* and *Artis, supra,* because the limiting language appears in the habendum. In any event, the rule of construction in G.S. 39-1 prevails over common law rules to the extent that they conflict. *See* G.S. 4-1.

### III. *Triplett v. Williams*

In 1908 the North Carolina Supreme Court construed a deed containing language strikingly similar to that of the quitclaim deed here. *Triplett, supra. Triplett* has never been overruled. Pursuant to the doctrine of *stare decisis,* we thus hold that it controls here.

The deed in *Triplett* gave land to a woman "and her heirs forever" in the granting clause, but the habendum stated that she was to have it "during her lifetime," and that it was to be divided equally between her children at her death. Thus, the granting clause standing alone conveyed a fee, while the habendum standing alone conveyed a life estate, just as the quitclaim deed here did.

The *Triplett* opinion began by paying obeisance to the common law rule of *Hafner v. Irwin,* 20 N.C. 570 (3 & 4 Dev. & Bat.) (1839), which held that the habendum may lessen, enlarge, explain or qualify the premises (i.e., the granting clause and all other parts of the deed preceding the habendum), but must be held void if repugnant to the granting clause. *Triplett, supra,* 149 N.C. at 395, 63 S.E. at 79. North Carolina common law had always maintained that a habendum or other clause may not divest an estate already vested in the granting clause. *See Whetsell, supra,* 291

N.C. at 130, 229 S.E. 2d at 185. The *Triplett* opinion proceeded to view the common law in a new perspective, however. It stated:

> But this doctrine, which regarded the granting clause and the *habendum* and *tenendum* as separate and independent portions of the same instrument, each with its especial function, is becoming obsolete in this country, and a more liberal and enlightened rule of construction obtains, which looks at the whole instrument without reference to formal divisions, in order to ascertain the intention of the parties, and does not permit antiquated technicalities to override the plainly expressed intention of the grantor, and does not regard as very material the part of the deed in which such intention is manifested.

*Triplett, supra,* 149 N.C. at 396, 63 S.E. at 79-80. The Court decided that the habendum so clearly showed the grantor's intent to convey a life estate that the word "heirs" in the granting clause must have been included in deference to the established formula for conveyances rather than out of a desire to convey an estate in fee simple. *Id.* at 399, 63 S.E. at 81. In so deciding the Court stated, based on the predecessor to G.S. 39-1 then in effect, that "[i]t is the legislative will that the intention of the grantor and not the technical words of the common law shall govern." *Id.* at 398, 63 S.E. at 80.

The Court stated in *Triplett* that it was "clear beyond doubt" that the grantor there intended to convey a life estate. *Id.* It is equally clear that the grantors here intended to convey a life estate since, in addition to using life estate language in the habendum, they omitted from the granting clause the word of inheritance "heirs." The failure of the quitclaim deed to name remaindermen does not serve to distinguish this case from *Triplett,* since a reversionary interest passes by operation of law.

*Triplett* did not depart from previous rules of construction, for the Court had previously stated that "[i]n the interpretation of a deed the first thing to be considered is to ascertain the intention of the parties and give it such a construction as will carry out their intention, so far as it can be done consistently with the established rules of law." *Rowland v. Rowland,* 93 N.C. 214, 218 (1885). *Triplett* did mark a departure in the application of this rule, however. In *Rowland, supra,* 93 N.C. at 220, the Court re-

ferred to 2 W. Blackstone, Commentaries 298 (Christian ed. 1794), for an illustration of a habendum that was void for repugnancy to the estate granted in the premises. The example was a grant to one and his heirs followed by a habendum to him for life. This illustration in *Rowland* was *obiter dictum* because it presented facts not involved in determination of the case. As such, it cannot constitute controlling precedent. *In re University of North Carolina*, 300 N.C. 563, 576, 268 S.E. 2d 472, 480 (1980). The *Rowland* illustration is also distinguishable from the present case in that it has words of inheritance in the granting clause. In any event, the holding in *Triplett*, while it does not expressly mention the dictum in *Rowland*, plainly rejects it; and *Triplett* is the controlling precedent here.

### IV. The Law Since *Triplett*

For forty years after *Triplett* the North Carolina Supreme Court consistently construed deeds according to the overall intent expressed in the instrument. *See, e.g., Krites v. Plott*, 222 N.C. 679, 24 S.E. 2d 531 (1943); *Jefferson v. Jefferson*, 219 N.C. 333, 13 S.E. 2d 745 (1941); *Lee v. Barefoot*, 196 N.C. 107, 144 S.E. 547 (1928).[1] The *Triplett* emphasis on intent was extended to allow conveyance of a life estate where the granting, habendum, and warranty clauses all used the form language for conveying a fee, but the deed contained additional words evincing a clear intent to convey a life estate. The Court stated in *Krites, supra*, 222 N.C. at 682, 24 S.E. 2d at 553:

> The true test is to take all of the provisions together and in the case of an apparent repugnance, to adopt that construction which is most consonant with the intent of the deed; and it cannot be questioned that this intent is not infrequently found in the later expressions of the instrument, and that they are sometimes of a character so impressive as to override the more formal technical expressions in which conveyances are sometimes couched.

This settled and straightforward rule of construction was significantly modified in *Artis v. Artis*, 228 N.C. 754, 47 S.E. 2d 228 (1948). The Supreme Court there held that the granting, habendum, and warranty clauses constitute the operative parts of

---

1. These cases have since been overruled. *See infra.*

a conveyance. Any additional words contrary to those clauses will be rejected as repugnant, since they are not part of the conveyance within the meaning of G.S. 39-1. *Id.* at 760, 47 S.E. 2d at 232.

The Court since has steadfastly applied the *Artis* rule. *See Whetsell, supra.* One result has been the overruling of *Krites, supra,* and *Jefferson, supra,* in *Jeffries v. Parker,* 236 N.C. 756, 73 S.E. 2d 783 (1953), and of *Lee, supra,* in *Tremblay v. Aycock,* 263 N.C. 626, 139 S.E. 2d 898 (1965). The practical effect of *Artis* and subsequent cases has been to replace a rule of construction with an inflexible rule of property which arbitrarily prefers certain formal parts of the deed over the plainly expressed intent of the grantor.

Although *Artis* undermines the *Triplett* rule of construction based on intent, it does not change the law as applied in *Triplett*, since the *Artis* line of cases has not involved inconsistencies between the granting and habendum clauses. *Triplett* has been narrowly confined to its facts, *see Whetsell, supra,* 291 N.C. at 131-32, 229 S.E. 2d at 186, but those facts are sufficiently close to those here to control our decision.

The Supreme Court in *Whetsell, supra,* 291 N.C. at 133, 229 S.E. 2d at 188, admitted that the *Artis* rule could subvert the grantor's real intention, but justified this result by the need for settled rules of property. It would seem that the *Triplett* rule of intent, based on prior common law and the predecessor to G.S. 39-1, was a well-settled rule before the "sudden and radical" change in *Artis. Id.* The reasons for adhering to the *Triplett* rule of construing the deed from the intent as conveyed in the entire instrument are ably stated in Justice Copeland's dissent in *Whetsell, supra,* 291 N.C. at 134-36, 229 S.E. 2d at 187-88, and in Note, Construction of a Deed—Continued Use of the *Artis-Oxendine* Rule to Subvert the Intention of the Parties, 13 Wake Forest L. Rev. 478 (1977). The facts here allow us to follow those reasons without conflicting with the *Artis* line of cases.

The General Assembly has required that deeds executed after 1 January 1968 be construed according to the intent expressed in all provisions of the instrument. G.S. 39-1.1(a). This statute essentially codifies the *Triplett* rule of construction. Thus, in holding that Maggie Robinson acquired a life estate, our ruling

is consistent with the law to be applied to deeds executed after 1 January 1968, as well as with existing common law and G.S. 39-1.

### V. Evidence of Intent Apart from the Deed

Evidence in addition to the quitclaim deed was presented. While arguably, in light of *Triplett*, there is no need to look beyond the four corners of the deed, there are some situations where outside evidence of intent should be considered. In *Seawell v. Hall*, 185 N.C. 80, 82, 116 S.E. 189, 190 (1923), our Supreme Court stated:

> [I]ntention, as a general rule, must be sought in the terms of the instrument; but if the words used leave the intention in doubt, resort may be had to the circumstances attending the execution of the instrument and the situation of the parties at that time—the tendency of modern decisions being to treat all uncertainties in a conveyance as ambiguities to be explained by ascertaining in the manner indicated the intention of the parties.

The following circumstances have been argued to provide evidence of the grantor's intent:

(1) The 1922 will of James Pickens Robinson, which was never admitted to probate, attempted to "bequeath" the land in dispute to Maggie Robinson. The grantors intended to achieve the result desired in the will by their waiver agreement and quitclaim deed to Maggie Robinson. The fact that the attempted will was homemade and uses the word "bequeath" instead of "devise," to dispose of realty, indicates that it was drafted by someone who lacked understanding of the technical legal meaning of words of conveyance. In such a situation, it is argued, it is especially important to derive the intent of the maker or grantor from the plainly expressed meaning of the whole document. The attempted will clearly stated that Maggie Robinson was to use the property during her lifetime. Therefore, contrary to defendants' contentions, the will is evidence, if anything, of an intent to convey a life estate.

(2) The 1924 recorded agreement among the four brothers of James Pickens Robinson stated their intent to make his will effective, to waive their rights to his property except for what they would receive under his will, and to make a deed to Maggie

Robinson of all their right, title, and interest in the subject property. As discussed above, the attempted will would have left reversionary interests in the four brothers, since it apparently would have devised Maggie Robinson only a life estate, and the waiver agreement does not indicate a clear intent to change that meaning of the will. As for the agreement to deed their interest to Maggie Robinson, the deed itself stated that she was to hold the property interest "during the term of her natural life," and there were no words of inheritance in the granting clause to contradict that limiting language.

(3) On the other hand, Maggie Robinson executed timber deeds in 1957 and 1966. She executed a will in 1946 which purported to devise her real property, and she never owned any real property other than the land in question. None of the four brothers made any testamentary disposition of their remainder interests, although one did execute a detailed will in 1946. These circumstances indicate that Maggie Robinson believed she had an estate in fee.

Such evidence has little probative value on the issue of whether the grantors intended to convey a fee or a life estate, however. Similarly, the failure of one brother to dispose of his reversionary interest in his will is little evidence that the grantors intended to convey a fee to their sister. The evidentiary weight of these circumstances is further diminished by the fact that they involve actions or omissions which occurred many years after the quitclaim deed was executed, and thus are not "circumstances attending the execution of the instrument and the situation of the parties at that time." *Seawell, supra.*

## VI. Conclusion

The surrounding circumstances and evidence apart from the quitclaim deed are ambiguous at best, and fail to show a clear intent on the part of the grantors to convey a fee simple. Because the granting clause here does not contain words of inheritance, while the granting clause in *Triplett* did, the deed here presents an even stronger case for the *Triplett* interpretation than did the deed there.

We apply G.S. 39-1 in light of the *Triplett* precedent, which we find controlling, and hold that the trial court properly ruled

that Maggie Robinson acquired only a life estate under the quitclaim deed. The order of summary judgment for plaintiffs is accordingly

Affirmed.

Judges HEDRICK and JOHNSON concur.