Hornets Nest Girl Scout Council, Inc. v. The Cannon Foundation, Inc.

N.C. at 511-13, 302 S.E. 2d at 784-85, and by this Court in *Hopkins*, 70 N.C. App. at 532-33, 320 S.E. 2d at 411-12. We decline to reproduce the same analysis here. As long as defendant makes an "additional misrepresentation beyond the presentation of a worthless check," he may be prosecuted under G.S. Sec. 14-100. *Hopkins*, 70 N.C. App. at 533, 320 S.E. 2d at 411. In the case at bar, defendant's additional misrepresentation, beyond presenting worthless checks, involved the creation of a fictional business with a bank account.

For the reasons set forth above, we find

No error.

Judges WEBB and COZORT concur.

———————

HORNETS NEST GIRL SCOUT COUNCIL, INC. v. THE CANNON FOUNDATION, INC.

No. 8519DC446

(Filed 4 February 1986)

**Deeds § 12.2— executory language in description—conflict with granting, habendum and warranty clauses—description not controlling**

　　The trial court erred by interpreting a 1951 deed from the Kannapolis Girl Scout Council to the Rowan-Cabarrus Girl Scout Council, plaintiff's predecessor in title, in a manner inconsistent with the granting, *habendum* and warranty clauses of the deed where the description contained delimiting language creating an executory interest in The Cannon Foundation and the granting, *habendum* and warranty clauses conveyed a fee simple. N.C.G.S. 55A-45.

APPEAL by plaintiff from *Horton, Judge*. Judgment entered 6 December 1984 in District Court, CABARRUS County. Heard in the Court of Appeals 6 November 1985.

Plaintiff, Hornets Nest Girl Scout Council, Inc. (Hornets Nest), instituted a declaratory judgment action on 15 August 1983 seeking an order and judgment declaring it to be the fee simple owner of a 22½ acre tract of land located in Cabarrus County.

The essential facts are:

Hornets Nest is a girl scout organization operating as a non-profit corporation based in Charlotte. Hornets Nest serves and controls the scouting activities for eight North Carolina counties, including Cabarrus County. The Cannon Foundation, Inc. (Cannon), is also a nonprofit corporation funded to provide grants for general public welfare purposes including charitable, scientific, religious, literary and educational purposes. The controversy between the parties centers around a 22½ acre tract of land located in Cabarrus County, six miles east of Kannapolis, known today as "Camp Julia."

In 1943 the Kannapolis Girl Scout Association decided to purchase this land for a girl scout camping facility. At that time the girl scout association itself did not have the means to acquire the property. The association enlisted the help of the Kannapolis community in raising money to purchase the property. In 1943 the property was purchased from J. A. Brown and wife for the sum of $6,500.00. A fee simple deed, made to "Kannapolis Girl Scout Association, Incorporated, of the County of Cabarrus," was executed on 11 November 1943 and recorded on 18 November 1943.

In 1951 Kannapolis Girl Scout Association, Inc. conveyed the property to the Rowan-Cabarrus Girl Scout Council, Incorporated. The deed was executed 30 May 1951 and recorded 9 June 1954. The plaintiff's evidence showed that in 1954, when this deed was recorded, there were no photostatic copying machines in Cabarrus County Register of Deeds office. All deeds filed for recordation were typed by Register of Deeds personnel onto a printed form. The original deed was returned to the owner. Using the printed form, the 1951 deed from Kannapolis Girl Scout Association (Kannapolis) to Rowan-Cabarrus Girl Scout Council (Rowan-Cabarrus) was recorded in deed book 255. Every deed in deed book 255 was typed on the printed form. The original deed from Kannapolis to Rowan-Cabarrus was lost. Accordingly, a certified copy of the deed as recorded in the Register of Deeds office was admitted and is part of the record on appeal.

The relevant parts of this deed are set out below. The words which apparently were typed on the form have been italicized by us.

WITNESSETH, That the said part*y* of the first part, for and in consideration of the sum of—*Tne [sic] dollars ($10.00)*

*and other valuable considerations*—DOLLARS, to the said party of the first part in hand paid, the receipt whereof is hereby acknowledged, has bargained, sold and conveyed, and by these presents does bargain, sell and convey unto the said party of the second part, *its successors* heirs and assigns the following described real estate . . . :

Following the granting clause in the deed was a description of the property, typed in the space provided on the form. Immediately following the description was the following typewritten provisions:

If the grantee herein be dissolved or cease to function for the period of one year, the title to the property herein conveyed shall revert to the Girl Scout organization in the community which owned it as of March 1, 1951. If such Girl Scouts shall have ceased to function, the said property shall go to Cannon Mills Foundation, Inc., to be used for the benefit of the Community.

The *habendum* clause which follows provides (the typewritten provisions are italicized):

TO HAVE AND TO HOLD all and singular the above granted premises, with the appurtenances, unto the said party of the second part, *its successors* heirs and assigns forever. And the said *Kannapolis Girl Scout Association, Incorporated* party of the first part, for *its successors and assigns* heirs, executors and administrators, does hereby covenant with the said party of the second part, *its successors* heirs and assigns, that *it is* seized of said premises in fee simple; that the said premises are free from all encumbrances; that *it has* good right and lawful authority to sell the same; that *it* will warrant and defend the said premises unto the said party of the second part, *its successors* heirs and assigns, against the lawful claims of all persons whatsoever.

On 28 May 1954 the corporate charter of the Kannapolis Girl Scout Association was suspended and never reinstated. On 4 May 1959 Rowan-Cabarrus Girl Scout Council, Inc. changed its name to Tarheelia Girl Scout Council, Inc. (Tarheelia).

In June, 1967 Tarheelia by general warranty deed conveyed the property to "Hornets Nest Girl Scout Council, Inc." The deed was recorded 26 June 1967 and contained the following reference:

> For reference see deed from Kannapolis Girl Scout Association, Incorporated, to The Rowan-Cabarrus Girl Scout Council, Incorporated, dated May 30, 1951, and recorded in Deed Book 255, page 32, in the Cabarrus County Registry.

In all other respects, the deed purported to convey fee simple title to Hornets Nest. On 30 June 1967 the articles of dissolution of the Tarheelia Girl Scout Council, Inc. were filed with the Secretary of State.

Hornets Nest filed its complaint for declaratory action on 15 August 1983 alleging that it desired to sell the property and convey good and marketable title to any prospective purchaser. The Cannon Foundation filed answer contending that the language in the 1951 deed from Kannapolis to Rowan-Cabarrus created a reversionary interest in Cannon to hold the property in trust for the community of Kannapolis. Additionally, Cannon claimed that Hornets Nest held the property on either a constructive trust or resulting trust and alternatively, that the North Carolina Non-Profit Corporation Act required Tarheelia to reconvey the property to Cannon Foundation upon its dissolution 30 June 1967. On 1 November 1983 Hornets Nest ceased using "Camp Julia" for scouting activities. It has, however, continued to maintain the property.

Although the record is unclear, it appears that a jury was impanelled and then dismissed by the trial judge following the presentation of the evidence. Both sides then made motions for declaratory judgment in their favor as a matter of law. The trial judge heard arguments of counsel and orally announced his judgment in favor of Cannon. At the court's direction the written judgment was prepared by counsel for Cannon. From the judgment ordering title to "Camp Julia" vested in Cannon for the benefit of the community of Kannapolis, plaintiff appeals.

*Haynes, Baucom, Chandler, Claytor & Benton, by William M. Claytor and Rex C. Morgan for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Leon L. Rice, Jr., Charles F. Vance, Jr., Elizabeth L. Quick, and M. Ann Anderson, and Brice J. Willeford for defendant-appellee.*

EAGLES, Judge.

Plaintiff assigns as error the trial court's interpretation of the 30 May 1951 deed from Kannapolis Girl Scout Association to Rowan-Cabarrus Girl Scout Council in a manner inconsistent with the granting, *habendum* and warranty clauses of the deed. We agree that the trial court's interpretation was erroneous.

At the outset we note two points not addressed by the trial judge in his order but necessary to a proper understanding of the facts before us. First, though there was testimony which could support such a finding, the trial court did not find that the deed from Kannapolis to Rowan-Cabarrus was a deed of gift. The deed recites "Tne [sic] dollars ($10.00) and other valuable considerations DOLLARS . . . in hand paid, the receipt hereof is hereby acknowledged." Where a deed recites the payment and receipt of a consideration it is presumed to be correct and is prima facie evidence of consideration. *Pelaez v. Pelaez*, 16 N.C. App. 604, 192 S.E. 2d 651 (1972), *cert. denied*, 282 N.C. 582, 193 S.E. 2d 745 (1973). Where there is no finding that the transfer was a gift and there is a recitation of consideration paid and received which is presumed correct, the recordation of the 1951 deed more than two years after its execution does not cause the deed to become void *ab initio*. Second, we note that the delimiting language contained in the 1951 deed from Kannapolis to Rowan-Cabarrus does not create a reversionary interest in The Cannon Foundation but an executory interest. A reversionary interest, whether a "possibility of reverter" or a "right of reentry," is a future interest retained by the *grantor* or his heirs and is considered vested for purposes of the Rule Against Perpetuities. Hetrick, Webster's Real Estate Law in North Carolina Sections 35, 37 (rev. ed. 1981); *Charlotte Park and Recreation Commission v. Barringer*, 242 N.C. 311, 88 S.E. 2d 114 (1955), *cert. denied*, 350 U.S. 983, 100 L.Ed. 851, 76 S.Ct. 469 (1956). An executory interest is a future interest conveyed to a *third person*, not the grantor, devisor or creator of

the interest or their heirs. Hetrick, *supra* at Section 40. An executory interest is subject to the Rule Against Perpetuities and must therefore vest in possession within the time period of the Rule, lives in being plus 21 years. *Id.* at Section 41. The clause as drafted in the 1951 deed would appear to violate the Rule. However, the Rule does not apply to charitable trusts. *Reynolds Foundation v. Trustees of Wake Forest College*, 227 N.C. 500, 42 S.E. 2d 910 (1947). The executory limitation over to The Cannon Foundation to hold the property for the benefit of the community would not be subject to the Rule.

The trial court by judgment entered 6 December 1984 made the following pertinent findings of fact:

2. The original of said deed was not before the Court, but only a certified copy of the copy on file in the Register of Deeds office. The recorded copy of the deed on page 32 of Volume 255 is a printed deed form which was used for the registration of all deeds recorded in Volume 255 in the Cabarrus County Register of Deeds office. The granting clause and the habendum clause are parts of the printed form of the deed, and the names of the parties, the description, and other provisions are typed into the printed form. The limiting language quoted above appears in type and comprises four lines in the center of the first page of the copy of the deed, and as a practical matter there was not sufficient space or room for the typed limiting language to have been inserted immediately before, in or immediately after the granting clause or the habendum clause as these clauses appear in the printed form deed.

3. Based on the uncontroverted testimony of James O. Bonds, Register of Deeds of Cabarrus County, the Court finds that none of the deeds presented for recordation in 1951 [sic] was photostated or photocopied but each was adapted by the Register of Deeds by typing on a standard pre-printed form names, dates, descriptions and other provisions not already parts of the form and that the granting and habendum clauses of the deed form would not have been [sic] permitted the insertion of four additional typewritten lines.

In decreeing that title to "Camp Julia" is vested in The Cannon Foundation, Inc. for the benefit of the community of Kan-

napolis, the trial court concluded, in part, as a matter of law the following:

4. The cases of *ARTIS v. ARTIS*, 228 N.C. 754, 47 S.E. 2d 228 (1948); *OXENDINE v. LEWIS*, 252 N.C. 669, 114 S.E. 2d 706 (1960); and *WHETSELL v. JERNIGAN*, 291 N.C. 128, 229 S.E. 2d 183 (1976) are distinguishable on their facts and do not apply in the instant case.

5. The original deed from Kannapolis Girl Scout Association, Inc. to Rowan-Cabarrus Girl Scout Council, Incorporated, dated May 30, 1951, has never been located and was not produced at trial. In the *ARTIS, OXENDINE* and *WHETSELL* cases, the court could determine the location in the deed of the limiting language. In the instant case, a certified copy of the deed that was recorded in the Register of Deeds office, which was typed by the Register of Deeds on a pre-printed form, was introduced at trial. The Court, not having the benefit of the original deed to determine the position of the limiting language, construes the intent of the grantor, Kannapolis Girl Scout Association, Inc., from the four corners of the deed, and finds the intent clearly stated, that is:

[Restatement of limiting language contained in 1951 deed]

6. When Tarheelia Girl Scout Council, Inc. conveyed the property to Hornets Nest Girl Scout Council, Inc., reference was made in that deed to the earlier deed between Kannapolis Girl Scout Association, Inc. and Rowan-Cabarrus Girl Scout Council, Inc. dated May 30, 1951; and because of such reference being contained in said deed, and under the provisions of North Carolina General Statute section 47-18, known as the "Conner Act," the plaintiff, Hornets Nest Girl Scout Council, Inc., was put on notice of all restrictions contained in prior deeds in the chain of title.

\*      \*      \*

9. When the typed and pre-printed parts of a deed are inconsistent with each other, the typed language should prevail over the pre-printed language in construing the intent of the grantor. Thus, construing the 1951 recorded deed from its four corners, the typed-in limitation will prevail in deter-

mining the intent of the grantor and the nature of the estate conveyed by the grantor to the grantee.

From a review of the record and North Carolina case law we find that *Artis v. Artis*, 228 N.C. 754, 47 S.E. 2d 228 (1948), *Oxendine v. Lewis*, 252 N.C. 669, 114 S.E. 2d 706 (1960) and *Whetsell v. Jernigan*, 291 N.C. 128, 229 S.E. 2d 183 (1976) control in the instant case. Therefore, the trial court's conclusion of law number 4 is erroneous.

In *Artis* the granting clause of the deed conveyed a fee simple. The *habendum* and warranty clauses were in accord. However, following the property description there was a clause which purported to give a life estate and not a fee. Our Supreme Court held that the deed conveyed a fee. In so holding the following rule was stated: "[W]here the entire estate in fee simple, in unmistakable terms, is given the grantee in a deed, both in the granting clause and *habendum*, the warranty being in harmony therewith, other clauses in the deed, repugnant to the estate and interest conveyed, will be rejected." *Artis, supra* at 761, 47 S.E. 2d at 232. That is the settled law of this jurisdiction, notwithstanding recurring criticism. The rule stated in *Artis* has been applied in numerous subsequent decisions by our Supreme Court. *Krites v. Plott*, 222 N.C. 679, 24 S.E. 2d 531 (1943) and *Jefferson v. Jefferson*, 219 N.C. 333, 13 S.E. 2d 745 (1941), cited by appellee, have been overruled, to the extent that they conflict with the *Artis* rule. *See Jeffries v. Parker*, 236 N.C. 756, 73 S.E. 2d 783 (1953).

The Rule is not a popular one. It has been described as "an inflexible rule of property which arbitrarily prefers certain formal parts of the deed over the plainly expressed intent of the grantor." *Robinson v. King*, 68 N.C. App. 86, 94, 314 S.E. 2d 768, 773, *cert. denied*, 311 N.C. 762, 321 S.E. 2d 144 (1984). Though criticized as a "harsh technical rule" and a "bad rule in that it frustrates [the] grantor's intent," *Whetsell, supra* at 134, 229 S.E. 2d at 187 (Copeland, J., dissenting), it nevertheless continues to be given effect. In the instant case, while there may be little doubt what the grantor, Kannapolis Girl Scout Association, intended when it placed the reverter and executory clauses in the deed, we are bound by the Rule. *Whetsell, supra.*

The fact that the original deed was lost and not available to the trial court is of no consequence. The trial court, like the title

examining bar, is bound by the certified copy of deed contained in the public records of the Registry for Cabarrus County. This is to prevent uncertainty and confusion in the examination of record titles. As explained by plaintiff's witness James O. Bonds, Register of Deeds for Cabarrus County, all deeds filed of record in 1954 were prepared in the exact same manner, using the same form, because no photostatic copying devices were available at that time.

In *Oxendine v. Lewis, supra,* our Supreme Court applied the *Artis* rule in construing a form printed deed filled in with type-written language. In *Oxendine,* as in the instant case, the delimiting clause was typed in on the form immediately following the property description. The granting clause conveyed fee simple title. The *habendum* and warranty clauses were in accord. The fact that the description was inserted in a form deed was "without controlling significance." *Id.* at 674, 114 S.E. 2d at 710. The court held that:

> The words in the deed in the instant case, apparently written in with a typewriter, appearing before and after the description of the land conveyed in fee simple and which tend to delimit the fee simple estate conveyed are not in the granting or *habendum* clause, and under a long line of our decisions as above set forth will be deemed surplusage without force or effect.

*Id.* at 674, 114 S.E. 2d at 710-11.

Here the granting clause conveyed a fee simple. The *habendum* and warranty clauses were in accord. The limiting clause appeared immediately following the typewritten description and was not made a part of the granting, *habendum* or warranty clauses by reference. "Consequently, the incompatible recital must yield to the more effective operative clauses, and must be rejected as repugnant." *Kennedy v. Kennedy,* 236 N.C. 419, 422, 72 S.E. 2d 869, 870 (1952). Hence, the clause inserted after the description which would otherwise tend to delimit the estate granted to Rowan-Cabarrus is deemed mere surplusage without force or effect. *Artis, supra; Oxendine, supra; Whetsell, supra.* As a result, Hornets Nest Girl Scout Council took a fee simple estate under its deed from Tarheelia Girl Scout Council, free and clear of the executory limitation over to Cannon Mills Foundation

found in the 1951 deed from Kannapolis Girl Scout Association to the Rowan-Cabarrus Girl Scout Council (Tarheelia).

Plaintiff also assigns error to the trial court's finding that upon dissolution in 1967, the Tarheelia Girl Scout Council was under a legal obligation by the terms of the Non-Profit Corporation Act to return the 22½ acre tract of land pursuant to the terms of the 1951 deed.

G.S. 55A-45 governs the distribution of assets upon the dissolution of a nonprofit corporation and provides in subsection (2) that:

> Assets held by the corporation upon condition requiring return, transfer or conveyance, which condition occurs by reason of the dissolution, shall be returned, transferred or conveyed in accordance with such requirements;

However, the clause in the 1951 deed limiting the estate granted and providing for an executory limitation over to The Cannon Foundation, Inc. has been deemed mere surplusage and without force or effect. Therefore, upon dissolution 30 June 1967, Tarheelia was under no obligation to convey "Camp Julia" to The Cannon Foundation for use by the community of Kannapolis. As a result, the trial court's findings and conclusion of law to that effect are erroneous.

For the foregoing reasons the judgment of the trial court is reversed and the cause remanded for entry of a judgment consistent with this opinion.

Chief Judge HEDRICK and Judge WELLS concur.