LOUISE PACK METCALF, BARBARA PACK HOLCOMBE, MICHAEL LAWRENCE, BARBARA PACK WHITE, AND ALICE WHITE MOBIDINE, PLAINTIFFS v. BLACK DOG REALTY, LLC AND BUNCOMBE COUNTY, NORTH CAROLINA, DEFENDANTS

No. COA08-1561

(Filed 3 November 2009)

## 1. Declaratory Judgments— standing—action to quiet title

The trial court did not err in a declaratory judgment action regarding the use of public property by denying defendant company's motion to dismiss based upon plaintiffs' lack of standing. To the extent that this is an action to quiet title, the pleadings have raised an actual controversy which is a proper subject for an action under the Uniform Declaratory Judgment Act.

## 2. Declaratory Judgments— summary judgment—written findings of fact and conclusions of law not required

The trial court did not err in a declaratory judgment action regarding the use of public property by denying defendants' motion for written findings of fact and conclusions of law in an order granting summary judgment. There were no issues of fact that were material to the resolution of the legal issues and the trial court was not required to make conclusions of law in the order.

## 3. Cities and Towns— dedication to public—common law offer and acceptance applies

The common law principles of offer and acceptance apply to dedications because North Carolina does not have statutory guidelines for dedications to the public.

## 4. Cities and Towns— express dedication—offer and acceptance–courthouse property

The trial court erred by granting summary judgment in favor of plaintiffs based on an offer of 31 December 1900 and acceptance of that offer as creating an express dedication of the courthouse property.

## 5. Cities and Towns— express public dedication—common law rules

The trial court erred by granting summary judgment in favor of plaintiffs based on the language of a deed as grounds for an express public dedication, and the trial court should have entered summary judgment in favor of defendants on this issue.

**6. Cities and Towns— implicit dedication—intent of owner**

The trial court erred by granting summary judgment for plaintiffs and not for defendants on the issue of implied dedication. There was no evidence that the owner ever had any intent to dedicate the courthouse property for use as an independent public park and even if plaintiffs' allegations that the courthouse property has been used for public purposes are taken as true, a county is not bound to continue to use real property in that manner for any particular period of time.

Appeal by defendant Black Dog Realty, LLC from orders entered 15 September 2008 and 18 September 2008 by Judge J. Marlene Hyatt in Superior Court, Buncombe County. Heard in the Court of Appeals 19 May 2009.

*Ferikes and Bleynat, PLLC, by Joseph A. Ferikes and Mary March Exum, for plaintiff-appellees.*

*Johnston, Allison & Hord, P.A., by Patrick E. Kelly, Daniel A. Merlin, and Michael L. Wilson, for defendant-appellant.*

*McGuire, Wood & Bissette, PA by Joseph P. McGuire, for defendant-appellant.*

*No brief filed on behalf of Buncombe County.*

STROUD, Judge.

George Willis Pack conveyed real property to Buncombe County in 1901 for use as a site for a new courthouse and county offices, in exchange for the County's dedication of the old courthouse site "forever to be used for the purpose of a public square park or place . . . ." A small portion of the real property which Pack conveyed to Buncombe County, known as the "Old County Jail Lot" is the subject of this action. This case presents the legal issue of whether there was an express or implied dedication of the property Pack conveyed to the County for irrevocable public use for the county courthouse and county offices or for a public park. Based upon Pack's offer to convey the property, the County's acceptance and the July 1901 deed, and considering the rules of construction applicable to these documents, we hold that the trial court erred in granting summary judgment to the Plaintiffs and enjoining defendant Black Dog Realty from any use of the real property inconsistent with the alleged dedication.

METCALF v. BLACK DOG REALTY, LLC

[200 N.C. App. 619 (2009)]

## I. Background

On 7 January 1901, the Board of Commissioners of Buncombe County ("the Board") recorded an order in the minutes of the Board to accept ("the acceptance") the following offer ("the offer") from George W. Pack ("Pack" or "Mr. Pack"), made on 31 December 1900:

> I offer to give to the County to be used for a site for a Court house and County offices the land on College Street in Asheville which I purchased of Col. A.T. Davidson [("the courthouse property")] provided that the County will dedicate to the public forever to be used for the purpose of a public square park or place whatever land [("the Pack Square property[1]")] the County may own within the limits of the public square so called, in Asheville, the present Court House, to be removed there from prior to such date as you may agree upon with Judge Merrimon and Mr. Gwyn acting for me[.]

On 24 July 1901, pursuant to the Board's 7 January 1901 acceptance of the offer, Pack and his wife, Frances Pack ("Mrs. Pack"), executed a deed ("the July deed") conveying the property ("the courthouse property") to the Commissioners of Buncombe County. Although the granting, habendum, and warranty clauses of the deed all conveyed the property in fee simple to the County, the last section of the July deed stated that the courthouse property was conveyed subject to the conditions that: (1) the new court house be completed and occupied by 1 January 1903 and the old court house removed from the future Pack Square by 1 July 1903, (2) no jail shall ever be built on the courthouse property, and (3) the courthouse property would never be sold or leased. It also provided that the property would revert to Pack and his heirs if any of the conditions were ever violated. These conditions in the July deed were not stated in the 31 December 1900 offer, including the condition that the courthouse property could never be sold or leased.

---

1. We will refer to the land on which the *old* courthouse was located, which the County was to "dedicate to the public forever to be used for the purpose of a public square park or place" as Pack Square, which is the name this property has been known by for many years. *See Alvey v. City of Asheville*, 146 N.C. 395, 395, 59 S.E. 999, 999-1000 (1907) ("Pack Square . . . is held and 'dedicated to free and unobstructed public use' in connection with a monument there placed in honor of one of the State's greatest citizens—Zebulon B. Vance.") It was not so identified or named in the offer or acceptance in 1901, but we use this title for ease of reference and to avoid confusion of the Pack Square tract of land with the courthouse property or with the City-County Plaza.

On 14 December 1901, Mr. and Mrs. Pack executed a substitute deed ("the December deed") of the courthouse property to the County. The December deed stated that it was "executed in lieu of and as a substitute for the deed executed by the parties of the first part on the 24th day of July 1901[.]" The granting clause of the December deed stated that Mr. and Mrs. Pack "do give, grant, bargain, sell and convey to the said party of the second part [the Board of Commissioners of Buncombe County] and to their successors in Office forever" the courthouse property. The habendum clause of the substitute deed added:

> To have and to hold the said lot or parcel of land with all the appurtenances thereunto belonging unto the said party of the second part its successors in office, forever, for the following and no other purpose, to wit: that is to say for the site of a County Court House, County Offices and such other purposes strictly incident to the usual and convenient occupation and use of said Court House and County Offices by the County Officials and the public.

After the habendum clause, the December deed provided that the parties "[waive] all conditions named in said deed of July 24th 1901; the said parties hereby waiving all conditions named in said deed . . . and agreeing as above stated that said lot shall be used as a site for a Court House and County Offices as hereinbefore set forth." The December deed contained no warranty clause. The December deed was executed only by Mr. and Mrs. Pack.

In or about 1903, the County constructed a courthouse and county office building on the courthouse property, although the 1903 courthouse was torn down in approximately 1928 and the current courthouse was later constructed. Despite the exact location of either courthouse, it appears that the parties are in agreement that the Old County Jail Lot, which is a small portion of the courthouse property, has been used as a part of the "public land surrounding [the courthouse or other county offices]" continuously since 1928.

In 2006, the Board passed a resolution authorizing "the commencement of the bidding process for the sale of . . . the "Old County Jail Lot[.]" The Board sold the property in accordance with N.C. Gen. Stat. § 160A-269. The Board published defendant Black Dog Realty's bid on 24 October 2006, setting a deadline of 3 November 2006 for upset bids. The Board ultimately accepted the highest bid, by defendant Black Dog Realty. On 21 November 2006, Buncombe County conveyed the Old County Jail Lot to Black Dog Realty.

On 28 September 2007, plaintiffs Louise Pack Metcalf ("Metcalf"), Barbara Pack Holcombe ("Holcombe"), and Michael Lawrence ("Lawrence") filed a complaint in Superior Court, Buncombe County for declaratory judgment, injunction, and breach of contract. The complaint alleged that

the offer of the subject property[2] by George Willis Pack and the acceptance of his offer by Buncombe County created perpetual rights in and to the subject property in favor of the public, including, but not limited to, dedication as an easement. Such easement was dedicated to the public for use as a park and as a site for a Court House and County Offices.

The complaint further alleged that defendant Black Dog Realty "has and intends to interfere with and [sic] the public's property rights to access and use the [courthouse property] for public purposes." As a remedy, the complaint requested the trial court to "permanently enjoin the Defendants, their agents, or anyone acting on their behalf from blocking or interfering with the public's easement and rights in and to the [courthouse property]." Further, the complaint requested a reversion of the courthouse property to the heirs and descendants of George Willis Pack and monetary damages for breach of contract. The complaint was amended on 29 November 2007 to add Barbara Pack White ("White") and Alice White Mobidine ("Mobidine") as plaintiffs.

On or about 28 December 2007, defendant Buncombe County ("the County") moved to dismiss Plaintiffs' complaint for want of standing and for failure to state a claim and raised several affirmative defenses. On 8 January 2008, defendant Black Dog Realty likewise moved to dismiss, raised numerous affirmative defenses, and brought counterclaims against Plaintiffs for slander of title and to quiet title pursuant to N.C. Gen. Stat. § 41-10 and in equity. The County filed a motion for summary judgment on 31 July 2008. Plaintiffs moved for summary judgment on 13 August 2008.

The trial court heard all of the pending motions on 25 August 2008 and entered judgment on 15 September 2008. The judgment denied Defendants' motions to dismiss, denied the County's motion

---

2. By "subject property," the complaint is referring to the entire tract we identify in this opinion as the "courthouse property", and the Old County Jail Lot is a portion of the courthouse property. The land which the County conveyed to Black Dog Realty is identified in the deed in part as "that certain tract or parcel of land known as the 'Old County Jail Lot'" and thus we will refer to the tract by this title also.

for summary judgment, and granted Plaintiffs' motion for summary judgment. The judgment was based upon Plaintiffs' claim for declaratory judgment pursuant to N.C. Gen. Stat. § 1-253 et seq. and the claim for injunctive relief, but did not specifically address Plaintiffs' claim for breach of contract or for reversion of the courthouse property, including the Old County Jail Lot, to Pack's heirs or descendants or for monetary damages. The judgment also did not mention defendant Black Dog Realty's claims for slander of title or to quiet title.[3] The trial court decreed "pursuant to N.C.G.S. § 1-253 et seq., that the subject property described in and attached to Plaintiffs' Amended Complaint[4] has been and continues to be subject to the offer of dedication by George W. Pack and the acceptance . . . by the Board of Commissioners of Buncombe County, North Carolina, and that said land shall only be used for purposes consistent with said dedication and acceptance."[5] The trial court further "permanently enjoined" Defendants from using the courthouse property "in any way inconsistent with the dedication and this Judgment."

Defendant Black Dog Realty made a motion for written findings of fact and conclusions of law pursuant to N.C. Gen. Stat. § 1A-1, Rules 52(a) and 52(b) on 15 September 2008. The trial court denied the motion for written findings of fact and conclusions of law on 18 September 2008. Defendants appeal from the order granting summary judgment as to the Plaintiffs' claim for declaratory judgment as well as the order denying their motion for written findings of fact and conclusions of law.

---

3. Although the judgment did not mention Plaintiffs' other claims or Black Dog Realty's counterclaims, as it was a declaratory judgment that the courthouse property, including the Old County Jail Lot, had been irrevocably dedicated to "purposes consistent with [that] dedication," the Plaintiffs' additional claims and defendant Black Dog Realty's counterclaims were implicitly denied. As the trial court did not grant the individual Plaintiffs' claims for reversion of the courthouse property or for monetary damages, and Plaintiffs did not cross-appeal from this ruling, only the Defendants' appeal of the declaratory judgment is at issue. Plaintiffs also acknowledged at oral argument and in their brief that they have abandoned their claims as heirs or descendants of Pack for breach of contract, reversion or monetary damages.

4. The "subject property" in the trial court's order is the property referred to herein as the courthouse property, of which the Old County Jail Lot was a small portion.

5. The purpose of the dedication as stated by the offer was a "site for a Court house and County offices." Although we are not certain that it would be possible for Black Dog Realty, as a private landowner, to use the Old County Jail Lot as a "site for a Courthouse and County offices," this is apparently what the trial court ordered.

METCALF v. BLACK DOG REALTY, LLC

[200 N.C. App. 619 (2009)]

## II. Standing

### A. Standard of Review

A ruling on a motion to dismiss for want of standing is reviewed de novo. *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). "In our de novo review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Id.* In our analysis of standing, we also consider that "North Carolina is a notice pleading jurisdiction, and as a general rule, there is no particular formulation that must be included in a complaint or filing in order to invoke jurisdiction or provide notice of the subject of the suit to the opposing party." *Id.* (citing *Mangum v. Surles*, 281 N.C. 91, 99, 187 S.E.2d 697, 702 (1972)).

Standing is determined at the time of the filing of a complaint. "Our courts have repeatedly held that standing is measured at the time the pleadings are filed. The Supreme Court has explained that '[w]hen standing is questioned, the proper inquiry is whether an actual controversy existed' when the party filed the relevant pleading." *Quesinberry v. Quesinberry*, —— N.C. App. ——, ——, 674 S.E.2d 775, 778 (2009) (citation omitted).

### B. Controlling Law

[1] Defendants argue that Plaintiffs lack standing to bring this lawsuit because they are not parties to the 1901 deeds and there is no evidence that they are the heirs of Pack or that they otherwise have any right, title or interest in the courthouse property.[6] Most of Defendants' argument as to standing is based upon Plaintiffs' claims for reversion of the courthouse property or for enforcement of restrictions upon use of the Old County Jail Lot "for the personal benefit of the grantor," Pack. For Plaintiffs to have standing as to those claims, we agree that the Plaintiffs would have to demonstrate that they are heirs or descendants of Pack or that they have some right, title, or interest in the courthouse property and the Old County Jail Lot. In their answers to interrogatories and affidavits, the most that any plaintiff has been able to confirm is that each plaintiff believes Pack to be one of his or her ancestors; no plaintiff has been able to establish that he or she is a lineal descendant or heir of Pack. Plaintiffs

---

6. As the briefs often use the general term "subject property" to refer to the courthouse property only, the Old County Jail Lot only, or both, we will instead use the terms "courthouse property" and "Old County Jail Lot" in this opinion for clarity.

have failed to demonstrate that they would have standing as to any claim of reversion or breach of contract, viewing the evidence in the light most favorable to the Plaintiffs. However, as noted above, Plaintiffs have abandoned their claims for reversion, breach of contract, and monetary damages, and only the declaratory judgment claim and injunctive relief are at issue.

Plaintiffs note in their brief that

plaintiffs want to make it clear to this Court, and to defendant Black Dog, that they are not seeking to have the [courthouse property] returned to them as descendants of George Pack . . . . Plaintiffs' concern, and the concern of the citizens of Buncombe County, is that the property remain in the public realm and be put solely to public uses, as was clearly stated in both deeds and in the offer of dedication, and as the property has been used for over 100 years. The property is subject to that restriction, whether owned by Black Dog, Buncombe County or the Pack heirs themselves. That is the remedy the Pack heirs have elected.

Plaintiffs argue that they have standing as "citizens and taxpayers . . . to seek equitable relief when governing authorities *are preparing* to put property dedicated to the public, to an unauthorized use." (emphasis added). Plaintiffs are correct that in certain situations, a citizen may have standing to seek equitable relief *from his or her local government.*

That a citizen, in his own behalf and that of all other taxpayers, may maintain a suit in the nature of a bill in equity to enjoin the governing body of a municipal corporation *from transcending their lawful powers or violating their legal duties* in any mode which will injuriously affect the tax-payers—such as making an unauthorized appropriation of the corporate funds, or an illegal or *wrongful disposition of the corporate property,* etc.—is well settled.

*Merrimon v. Southern Paving & Const. Co.,* 142 N.C. 539, 545, 55 S.E. 366, 367 (1906) (emphasis added), *cited with approval in Goldston v. State,* 361 N.C. 26, 32, 637 S.E.2d 876, 880 (2006). However, this case is unique, in that although the County is a defendant, Plaintiffs do not seem to be seeking relief from the County.[7]

---

7. Defendant County did file motions to dismiss the Plaintiffs' claims as to the County based upon the Plaintiffs' standing and pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), and these motions were denied. Defendant County did not appeal the trial court's orders and did not file a brief before this court.

Plaintiffs did not allege that the County "transcended [its] lawful power or violated [its] legal duties" by selling or disposing of the Old County Jail Lot. The County sold the Old County Jail Lot to Black Dog Realty nearly a year before the inception of this action. The remainder of the courthouse property is still being used as a site for the county courthouse and office building; there is no contention that any defendant has used or intends to use the courthouse property which is still owned by the County in any manner inconsistent with the alleged dedication. As to the Old County Jail Lot, the most the Plaintiffs could complain of at this point in time as to the County is that the County is not seeking to prevent Black Dog Realty from using the lot in a manner inconsistent with the alleged dedication. However, the trial court has enjoined both Defendants from using the courthouse property, including both the portion still owned by the County, and the Old County Jail Lot, owned by Black Dog Realty, in any manner inconsistent with the alleged public dedication of the property.

Thus we must clearly identify the standing issue presented to the court in this case, something no party has done in their briefs. The question is whether Plaintiffs have standing to seek a declaratory judgment that the Old County Jail Lot, now owned by Black Dog Realty, is subject to restrictions in use based upon the alleged dedication of the courthouse property for use as a courthouse or a park. N.C. Gen. Stat. § 1-254 establishes the requirements for standing to seek a declaratory judgment:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder . . . .

N.C. Gen. Stat. § 1-254 (2007). This court has noted that under the Declaratory Judgment Act,

> [s]tanding refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter. A party seeking standing has the burden of proving three necessary elements:
>
> (1) "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent,

not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

. . . .

A party has standing to initiate a lawsuit if he is a real party in interest. A real party in interest is one who benefits from or is harmed by the outcome of the case and by substantive law has the legal right to enforce the claim in question.

*Beachcomber Properties, L.L.C. v. Station One, Inc.* 169 N.C. App. 820, 823-24, 611 S.E.2d 191, 193-94 (2005) (internal citations and quotation marks omitted). Although Plaintiffs did allege in their complaint and amended complaint that they have a legally protected interest in the courthouse property, by virtue of their status as Pack's heirs or descendants, their affidavits and responses to discovery demonstrate that Plaintiffs cannot support that allegation.

However, defendant Black Dog Realty brought a counterclaim to quiet title, pursuant to N.C. Gen. Stat. § 41-10 (2007).

[A] suit to quiet title to real property under G.S. [§] 41-10 . . . is designed and intended to provide a means for determining all adverse claims, equitable or otherwise. It is not limited to a particular instrument, bit of evidence, or encumbrance but is aimed at silencing all adverse claims, documentary or otherwise. Any action that could have been brought under the old equitable proceeding to remove a cloud upon title may now be brought under the provision of G.S. [§] 41-10. This statute has been liberally construed.

*York v. Newman,* 2 N.C. App. 484, 488, 163 S.E.2d 282, 285, *disc. rev. denied,* 274 N.C. 518 (1968). Because the counterclaim to quiet title is defendant Black Dog Realty's claim, this case presents a quandary as to standing, because if we were to find that no plaintiff has standing and that the Plaintiffs' claims should have been dismissed on that basis, we are still left with Black Dog Realty's counterclaim to quiet title, which raises the very same legal issues.[8] We therefore conclude that at least to the extent that this is an action to quiet title, the pleadings have raised "an actual controversy [which] is a proper subject for an action under the Uniform Declaratory Judgment Act." *Id.* at

---

8. We note that Plaintiffs did not file a reply to Black Dog Realty's counterclaim to quiet title and did not move to dismiss the counterclaim.

490, 163 S.E.2d at 286. The trial court therefore did not err by denying defendant Black Dog Realty's motion to dismiss based upon Plaintiffs' lack of standing.

### III. Summary of Substantive Questions Presented

[2] Defendants contend that proper construction of the deed is dispositive of this case. They contend that the July and December deeds unambiguously conveyed the courthouse property to the County in fee simple. They contend that even if the December deed is ambiguous, the rule of construction that a deed is presumed to convey a fee simple unless an unequivocal intention by the grantor to convey a lesser estate than a fee simple compels finding of a fee simple interest in this case. They further contend that since the County received a fee simple interest in the courthouse property from the Packs, the County had an unlimited power of alienation of the courthouse property, including the Old County Jail Lot.

Plaintiffs argue that the courthouse property was dedicated to public use "as a park and as a site for a Court House and County Offices." Plaintiffs conflate the issues and the allegedly intended public uses of the courthouse property in both their complaint and their brief, but it appears that they contend that the courthouse property was dedicated to public use in one or more of three ways: (1) an express dedication when Pack made his offer of 31 December 1900 which was accepted by order to the County Commissioners on 7 January 1901, (2) an express dedication by the habendum clause of the December 1901 deed, or (3) an implied dedication on the basis of continual use by the public for over one hundred years.

### IV. Standard of Review

The standard of review for summary judgment is well-settled:

Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial.

*In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citations and quotation marks omitted). Construction of deeds and contracts presents additional considerations on a motion for summary judgment which will be discussed in detail below. Based upon the offer and acceptance and the deeds, Plaintiffs and defendant Buncombe County both moved for summary judgment. Plaintiffs and defendant Black Dog Realty requested a declaratory judgment. Although the record presents some minor issues of fact, primarily regarding the exact time periods of usage of the Old County Jail Lot for a particular purpose, none of the issues of fact are material to the resolution of the legal issues.

We would also note that Defendants appealed from the trial court's order of 18 September 2008 denying their motion for written findings of fact and conclusions of law. Because the order of 15 September 2008 addressed only motions to dismiss and cross-motions for summary judgment, no written findings of fact or conclusions of law were required. Rule 52(a)(1) applies "[i]n all actions tried upon the facts . . . ." N.C. Gen. Stat. § 1A-1, Rule 52(a) (2007).

A motion for summary judgment is not an action tried upon the facts since this motion can only lie where there is no necessity for trying the action upon the facts. This rule does not require the trial court to make findings of fact when requested by a party in deciding a motion for summary judgment. The making of additional specific findings and separate conclusions on a motion for summary judgment is ill advised since it would carry an unwarranted implication that a fact question was presented.

*Oglesby v. S.E. Nichols, Inc. by Noecker*, 101 N.C. App. 676, 680, 401 S.E.2d 92, 95 (citation and quotation marks omitted), *disc. review denied*, 329 N.C. 270, 407 S.E.2d 839 (1991). "[E]ither on a motion to dismiss or a motion for summary judgment, it is not necessary or required for the trial court to enter conclusions of law, and that if such are entered, they are disregarded on appeal." *City of Charlotte v. Little-McMahan Properties, Inc.*, 52 N.C. App. 464, 469, 279 S.E.2d 104, 108 (1981) (citation omitted). The trial court therefore did not err by denying Defendants' motion for written findings of fact and conclusions of law on the order granting summary judgment.[9]

_____

9. If the order had granted declaratory relief and an injunction upon a *bench trial*, and not upon summary judgment, the trial court would have been required to make findings of fact and conclusions of law, in accordance with N.C. Gen. Stat. § 1A-1, Rule 52(a) (1). *Appalachian Poster Advertising Co., Inc. v. Harrington*, 89 N.C. App. 476, 479, 366 S.E.2d 705, 707 (1988). In this particular case, a hearing on motions for sum-

## V. General Principles of Dedication

**[3]** All of Plaintiffs' claims are based upon the premise that either Pack, the County, or both, have irrevocably dedicated the courthouse property, including the Old County Jail Lot, to public use "as a park and as a site for a Court House and County Offices." "Dedication is a form of transfer whereby an individual grants to the public rights of use in his or her lands." *Kraft v. Town of Mt. Olive,* 183 N.C. App. 415, 418, 645 S.E.2d 132, 135 (2007).

> Dedication is the intentional appropriation of land by the owner to some proper public use. More specifically, it has been defined as an appropriation of realty by the owner to the use of the public and the adoption thereof by the public,—having respect to the possession of the land and not the permanent estate.

*Spaugh v. City of Charlotte,* 239 N.C. 149, 159, 79 S.E.2d 748, 756 (1954) (citations and quotation marks omitted). "Dedication is an exceptional and peculiar mode of passing title to an interest in land . . . . [T]he courts will not lightly declare a dedication to public use." *State Highway Commission v. Thornton,* 271 N.C. 227, 233, 156 S.E.2d 248, 253 (1967) (citations and quotation marks omitted).

Dedication requires an offer by the owner and acceptance "on the part of the public in some recognized legal manner and by a proper public authority." *Kraft,* 183 N.C. App. at 420, 645 S.E.2d at 137 (citation and quotation marks omitted). The offer of dedication may be "in express terms or it may be implied from conduct on the part of the owner." *Spaugh,* 239 N.C. at 159, 79 S.E.2d at 756. Similarly, acceptance "in some recognized legal manner includes both express and implied acceptance." *Kraft,* 183 N.C. App. at 418, 645 S.E.2d at 135 (citation and quotation marks omitted). "Express acceptance can occur, *inter alia,* by a formal ratification, resolution, or order by proper officials, the adoption of an ordinance, a town council's vote of approval, or the signing of a written instrument by proper authorities." *Kraft,* 183 N.C. App. at 420-21, 645 S.E.2d at 137 (citation and quotation marks omitted). "Because North Carolina does not have statutory guidelines for dedicating streets to the public, the common law principles of offer and acceptance apply." *Tower Development Partners v. Zell,* 120 N.C. App. 136, 140, 461 S.E.2d 17, 20 (1995).

---

mary judgment and a bench trial on the merits probably would have been essentially the same, as a practical matter, except that the trial court relied upon affidavits and discovery at the summary judgment hearing, but would have relied upon testimony and exhibits presented during a bench trial.

## VI. Express Dedication by Offer and Acceptance

**[4]** The trial court based its order granting summary judgment upon the 31 December 1900 offer and the County's acceptance of that offer as creating an express dedication of the courthouse property. Thus, we first consider whether Pack's 31 December 1900 offer ("I offer to give to the County to be used for a site for a Court house and County offices . . . .") and subsequent acceptance of the offer by the County's Board of Commissioners were sufficient to constitute dedication to public use.

The offer and acceptance were followed by a deed, which was executed on 24 July 1901. Therefore, we first note that the terms of a contract for the sale of land are generally "not enforceable when the deed fulfills all the provisions of the contract, since the executed contract then merges into the deed." *Biggers v. Evangelist*, 71 N.C. App. 35, 38, 321 S.E.2d 524, 526 (1984) (citing *Gerdes v. Shew*, 4 N.C. App. 144, 166 S.E.2d 519 (1969); 26 C.J.S. *Deeds* Sec. 91(c) (1956)), *disc. review denied*, 313 N.C. 327, 329 S.E.2d 384-85 (1985).

> [I]t is well-recognized that the intent of the parties controls whether the doctrine of merger should apply. *Stewart v. Phillips*, 154 Ga. App. 379, 268 S.E.2d 427 (1980) (survival clause-no merger); *Bryant v. Turner*, 150 Ga. App. 65, 256 S.E.2d 667 (1979) (closing statement revealed intent not to merge); *Vaughey v. Thompson*, 95 Ariz. 139, 387 P.2d 1019 (1963), 8A G.W. Thompson, *Real Property* Sec. 4458 (1963 & Supp. 1981); Annot., 38 A.L.R.2d 1310 (1953).

*Id.* In this case, the offer and acceptance were not in the form of a contract for the sale and purchase of the courthouse property, but in the form of the offer to the Board to transfer the courthouse property in consideration of the Board's dedication of other land, Pack Square, to be used as a public park or square. Also, the offer and acceptance did not indicate any intent that the terms of the offer and acceptance would not merge into the deed. Ultimately, the July deed quoted the terms of the offer and noted that the Board had ordered that the offer be accepted. Therefore, the terms of the offer and acceptance were literally merged into the July deed, and the July deed then became the enforceable, operative document. The December deed did not mention the offer and acceptance or incorporate their terms. However, the trial court explicitly based its order granting summary judgment

METCALF v. BLACK DOG REALTY, LLC

[200 N.C. App. 619 (2009)]

upon the terms of the offer and acceptance.[10] Because the terms of the offer and acceptance were included in the July deed and because the trial court based its order upon these terms, we will first address the offer and acceptance.

"A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court. If the agreement is ambiguous, however, interpretation of the contract is a matter for the jury." *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 421-22, 547 S.E.2d 850, 852 (2001) (citations and quotation marks omitted). "Contracts are interpreted according to the intent of the parties. The intent of the parties is determined by examining the plain language of the contract. Extrinsic evidence may be consulted when the plain language of the contract is ambiguous." *Brown v. Ginn*, 181 N.C. App. 563, 567, 640 S.E.2d 787, 789-90 (2007) (citations omitted), *disc. review denied*, 361 N.C. 350, 645 S.E.2d 766 (2007).

Taking these principles of contract interpretation together with the standard of review for summary judgment, when the language of a contract is not ambiguous, no factual issue appears and only a question of law which is appropriate for summary judgment is presented to the court. In the case *sub judice*, the intent of the parties is clear from the unambiguous words of the offer and the acceptance, hence the contract is ripe for judicial interpretation and summary judgment. *Liptrap v. Coyne*, —— N.C. App. ——, ——, 675 S.E.2d 693, 696 (2009).

From the words of the offer, Pack's intent was for the County to dedicate the land on which the old courthouse stood to be used as a park which would be dedicated to public use, now known as Pack Square. In exchange for the County's dedication of the old courthouse site as a park (Pack Square), he offered to convey to the County land to be used for a new courthouse and county offices (the courthouse property). This was not an offer to dedicate the courthouse property to public use forever; it was merely an *offer to transfer* land to be used for a new courthouse and county offices *in exchange for the County's dedication* of the land upon which the old courthouse then sat for use as a park and public square. Pack's intent becomes even clearer from the second clause of the offer: "[T]he County will dedicate to the public forever to be used for the purpose of a public square park or place whatever land the County may own within the

---

10. We are unable to determine from the summary judgment order if the trial court was referring to the terms of the offer and acceptance as they were originally made or the same terms which were set forth in full in the July deed.

limits of the public square so called, in Asheville, the present Court House, to be removed there from . . . ." Pack obviously knew the language required to unequivocally dedicate land to public use forever, and he used this language as to the land to be used as a public park, now Pack Square.[11] The fact that he did not use such language in referring to the courthouse property demonstrates that he did not intend to dedicate the courthouse property to public use "forever" as a site for a courthouse and county offices, although he did intend to convey it to the County to be used as a site for a new courthouse, as the old one was to be removed from the Pack Square property.

Therefore, even if the terms of the offer and acceptance were controlling over the July deed, the offer and acceptance did not create a permanent dedication of the courthouse property to public use as a site for a courthouse or as a public park. We conclude therefore that summary judgment in favor of Plaintiffs, insofar as it rested on the offer of 31 December 1900 and the acceptance of 7 January 1901, was error.

Although the trial court based its order upon express dedication by the offer and acceptance, which we have found to be in error, we must also consider whether the courthouse property was dedicated in some other manner, as the Plaintiffs contend.

> If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered. *Sanitary District v. Lenoir*, 249 N.C. 96, 105 S.E.2d 411 (1958); *Hayes v. Wilmington*, 243 N.C. 525, 91 S.E.2d 673 (1956).

*Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989). In addition, as noted above, the offer and acceptance were merged into the July deed, so we must consider the terms and effect of the July deed.

### VII. Express Dedication Through the Deed

#### A. Standard of Review

**[5]** "The meaning of the terms of the deed is a question of law, not of fact." *Mason-Reel v. Simpson*, 100 N.C. App. 651, 654, 397 S.E.2d 755,

---

11. As the County, not Pack, owned the Pack Square property, technically Pack himself would not have been able to "dedicate" Pack Square, but there is no issue in this case as to the dedication or use of the Pack Square property. We discuss it only because it was a part of the transaction at issue and the language used helps to demonstrate the intent of the parties as to the courthouse property.

756 (1990) (citing *Brown v. Hodges*, 232 N.C. 537, 541, 61 S.E.2d 603, 606 (1950), *reh'g denied*, 233 N.C. 617, 65 S.E.2d 144 (1951)). Therefore, "[a]mbiguous deeds traditionally have been construed by the courts according to rules of construction, rather than by having juries determine factual questions of intent." *Robinson v. King*, 68 N.C. App. 86, 89, 314 S.E.2d 768, 771, *disc. rev. denied*, 311 N.C. 762, 321 S.E.2d 144-45 (1984). Questions of law are reviewed *de novo* on appeal. *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003).

B.  General Rules of Deed Construction

"In construing a conveyance executed after January 1, 1968, in which there are inconsistent clauses, the courts shall determine the effect of the instrument on the basis of the intent of the parties as it appears from all of the provisions of the instrument." N.C. Gen. Stat. § 39-1.1(a) (2007). However, in construing deeds executed before 1 January 1968, the common law rules of deed construction apply to determine the intent of the parties. *See Whetsell v. Jernigan*, 291 N.C. 128, 133, 229 S.E.2d 183, 186 (1976) (citing N.C. Gen. Stat. § 39-1.1(a)). Because the deed *sub judice* was executed prior to 1 January 1968, we must apply the common law rules. *Id.*

In a case decided not long after execution of the deed *sub judice*, the North Carolina Supreme Court stated the rules of deed construction as follows:

> There are well-settled rules adopted by the courts in construing doubtful or ambiguous expressions in deeds. Those which will aid us in the solution of the question presented are: (1) That the entire deed must be read, and such construction of particular clauses be adopted as will effectuate the intention of the parties as gathered from the whole instrument. (2) That such construction shall be adopted as will, if possible, give to every portion thereof effect. (3) That, when terms are used which are clearly contradictory, the first in order shall be given effect to the exclusion of the last. (4) That, when language is of doubtful meaning, that construction shall be put upon it which is most favorable to the grantee.

*Murphy v. Murphy*, 132 N.C. 360, 362, 43 S.E. 922, 922 (1903) (citations and quotations marks omitted). *Artis v. Artis*, 228 N.C. 754, 761, 47 S.E.2d 228, 232 (1948), modified *Murphy's* third rule of construction and elevated the granting clause, followed by the habendum

clause and the warranty clause, above other language in the deed. 228 N.C. 754, 761, 47 S.E.2d 228, 232 (1948). According to *Artis*, "[t]he granting clause is the very essence of the contract." *Id.* at 760, 47 S.E.2d at 232 (citation and quotation marks omitted). If the granting clause, the habendum clause, and the warranty clauses all convey a fee simple interest, any other language in the deed which may appear to limit the fee simple interest is of no effect. Our Supreme Court has stated the rule as follows: "[W]here the entire estate in fee simple, in unmistakable terms, is given the grantee in a deed, both in the granting clause and habendum, the warranty being in harmony therewith, other clauses in the deed, repugnant to the estate and interest conveyed, will be rejected." *Artis*, 228 N.C. at 761, 47 S.E.2d at 232. Although this common law rule of construction has been criticized as elevating form over substance, this rule is "the settled law of this jurisdiction" for deeds executed prior to 1968 and has been "applied in numerous subsequent decisions by our Supreme Court." *Hornets Nest Girl Scout Council, Inc. v. Cannon Foundation, Inc.*, 79 N.C. App. 187, 194, 339 S.E.2d 26, 31 (1986).

1. The July and December Deeds

As stated above, both Plaintiffs and Defendants make several arguments regarding terms contained in the habendum clause and waiver of conditions in the December deed. Plaintiffs contend that because the July deed "contain[ed] a right of reverter clause, upon the happening of any of several events, the July deed actually describes an estate in fee simple determinable, not in fee simple absolute." Plaintiffs go on to note that "since the December deed waives the restrictions of the July deed and was purportedly executed in lieu of and as a substitute for the July deed, the language of the December deed will most likely affect the outcome of this matter." Defendants argue that if the July deed did not convey a fee simple interest, the December deed effected "a release of the right of reverter and the waiver of all conditions subsequent, if any, in the July Deed." However, if the July deed conveyed a fee simple absolute interest to the County, then the terms of the December deed are irrelevant as in December, and Pack would have had no ownership interest in the courthouse property. Plaintiffs make no argument and present no evidence that the County did not accept the July deed and therefore the County's acceptance is presumed. *See Corbett v. Corbett*, 249 N.C. 585, 590, 107 S.E.2d 165, 169 (1959) ("Where a deed is executed and recorded, it is presumed that the grantee therein will accept the deed made for his benefit . . . . Such presumption will pre-

vail in the absence of evidence to the contrary."). Thus, we will first examine the terms of the July deed.

Where a deed contains express and unambiguous language of reversion or termination, that deed conveys a determinable fee or a fee on condition subsequent. *Station Associates, Inc. v. Dare County*, 350 N.C. 367, 371-72, 513 S.E.2d 789, 793 (1999) "The language of termination necessary to create a fee simple determinable need not conform to any set formula." *Id.* 350 N.C. at 373, 513 S.E.2d at 794 (citations and quotation marks omitted). However, this Court has held:

> When the granting clause in a deed . . . conveys an unqualified fee *and the habendum contains no limitation on the fee thus conveyed* and a fee simple title is warranted in the covenants of title, any additional clause or provision repugnant thereto . . . inserted in the instrument as a part of, or following the description of the property conveyed, or elsewhere *other than in the granting or habendum clause*, which tends to delimit the estate thus conveyed, will be deemed mere surplusage without force or effect.

*Anderson v. Jackson County Bd. of Education*, 76 N.C. App. 440, 446, 333 S.E.2d 533, 536 (1985) (citing *Oxendine v. Lewis*, 252 N.C. 669, 672, 114 S.E.2d 706, 709 (1960)), *disc. rev. denied*, 315 N.C. 586, 341 S.E.2d 22 (1986). *See also Blackwell v. Blackwell*, 124 N.C. 269, 270-71, 32 S.E. 676, 677 (1899) (Where the deed conveyed a fee simple interest, and the habendum clause contained no limitation on that fee, the court determined the last clause of the deed, conveying a life estate to a third party in the same property, to be "repugnant" to the fee granted and therefore void). Further, "[w]hen language creating a fee simple determinable and possibility of reverter is contained within the granting or habendum clause of a deed, this limitation on the fee simple interest is valid." *King Associates, LLP v. Bechtler Development Corp.*, 179 N.C. App. 88, 94, 632 S.E.2d 243, 248 (2006) (citations omitted). "In contrast, where the granting and habendum clauses do not limit the fee simple interest, then any conditional language contained within a separate provision of the deed cannot create a valid fee simple determinable." *Id.* at 94-95, 632 S.E.2d at 248 (citation and quotation marks omitted).

The granting clause of the July deed provides that Pack and Mrs. Pack "have bargained and sold and by these presents do bargain, sell and convey to [the Board of Commissions of the County] and their successors in office forever, a certain piece or parcel of land," the

courthouse property, which is then identified by reference to the deed to Pack and by a metes and bounds description. This granting clause conveys an unqualified fee simple interest to the County. *See Oxendine*, 252 N.C. at 672, 114 S.E.2d at 709 (the words "bargain, sell and convey unto the said party of the second part, and to her heirs and assigns forever" held to convey an unqualified fee).

We must then consider the habendum clause, which states: "To Have and to hold, the said lot or parcel of land, with all the appurtenances thereunto belonging unto the party of the second part and its successors in office forever." The habendum clause also contains no limits on the fee simple interest granted to the County.

The habendum clause is followed by the warranty clause, which provides that "[Pack], for himself, his heirs and assigns, doth covenant to and with [the Board] and its successors in office that he is seized in fee simple of said lot or parcel of land and has good right to convey the same; that the same is free from all encumbrances, and that he will warrant and defend the same unto [the Board] and its successors, in office against the lawful claims of all persons forever." Again, the warranty clause contains no limitation upon the interest conveyed. Thus, the granting clause, the habendum clause, and the warranty clause are all in agreement as to the interest conveyed, a fee simple which is not subject to any limitations or conditions.

All of the conditions which Plaintiffs argue create a fee simple determinable limitation with a possibility of reverter or a dedication to public use are contained after the three operative clauses of the deed as noted above. This language provides that the deed was made in accordance with Pack's offer of 7 January 1901 to the Board, as discussed above, and then sets forth detailed conditions as to the time table for the removal of the old courthouse and the construction of the new courthouse, among other conditions. However, under the rules of construction applicable to this 1901 deed, because none of these conditions were included within the granting, habendum, or warranty clauses of the July deed, they are repugnant to the fee simple interest conveyed and therefore "mere surplusage without force or effect." *Anderson*, 76 N.C. App. at 446, 333 S.E.2d at 536.

We therefore hold that by the July deed, Pack conveyed his entire fee simple absolute interest in the courthouse property to the County, and the additional language in the deed did not create any limitations or conditions upon the fee simple interest. Summary judgment in favor of Plaintiffs is in error insofar as it rests upon the language the

METCALF v. BLACK DOG REALTY, LLC

[200 N.C. App. 619 (2009)]

July deed or the terms of the offer and acceptance contained within the July deed. Because Pack conveyed his whole interest in fee simple in the July deed, he had no remaining interest to convey in the December deed, making any language contained in the December deed irrelevant. Pack could not expressly dedicate the courthouse property or limit its use in any way by the December deed, regardless of its language, as he no longer had any interest in the courthouse property.[12] Therefore, summary judgment in favor of Plaintiffs, insofar as it rests upon the language of the December deed as grounds for an express public dedication, was also error. The trial court should have entered summary judgment in favor of Defendants on this issue.

## VIII. Implicit Dedication

[6] Plaintiffs also argue that even if the offer and the acceptance or the language in the habendum clause of the December deed were ineffective to create a dedication to the public, an implicit dedication was created because Plaintiffs presented "undisputed evidence" that "the [courthouse property, including the Old County Jail Lot,][13] has been used for public purposes—primarily as a public park—for the last 107 years."[14]

Just as with an express dedication, an implied dedication of property for public use requires "(1) an offer of dedication, and (2) an acceptance of this offer by a proper public authority." *DOT v. Elm Land Co.*, 163 N.C. App. 257, 265, 593 S.E.2d 131, 137 (citation and quotation marks omitted), *disc. rev. denied*, 358 N.C. 542, 599 S.E.2d 42 (2004). For an implied dedication, the offer may arise from "conduct of the owner manifesting an intent to set aside land for the public." *Id.* (citation and quotation marks omitted). "In either case,

---

12. However, we note that the December deed purported to release many of the alleged conditions of the July deed regarding the use of the courthouse property, so that if the December deed did have any effect, the result would be the same.

13. Despite the evidence in the record as to the County's use of the Old County Jail Lot as a park for some long period of time, we suspect that the lot might have been used for a County Jail at some point in time. We also note that it is undisputed that the Buncombe County Courthouse and County Office Building are still located on a portion of the courthouse property which is still owned by the County. However, these factual issues are not material to our analysis.

14. The Old County Jail Lot was a part of the courthouse property, in front of the Courthouse and City Hall. In contrast to the plaintiff's first arguments addressed above, that the courthouse property, including the Old County Jail Lot, was dedicated for purposes of a *courthouse*, in this argument, they claim that the implied dedication of the courthouse property, including the Old County Jail Lot, was for use as a *public park*.

whether express or implied, it is the owner's intent to dedicate that is essential. *See, Milliken v. Denny*, 141 N.C. 224, 229-30, 53 S.E. 867, 869 (1906); *Nicholas v. Salisbury Hardware & Furniture Co.*, 248 N.C. 462, 468, 103 S.E.2d 837, 842 (1958)." *Id.*

> When proving implied dedication, where no actual intent to dedicate is shown, the manifestation of implied intent to dedicate must clearly appear by acts which to a reasonable person would appear inconsistent and irreconcilable with any construction except dedication of the property to public use. In general it appears that an implicit intention may be demonstrated by: [1.]-The owner's use of the [dedicated property] as a boundary in a deed, as long as the use was not for descriptive purposes only. [2.]-The owner's affirmative acts respecting the property. [3.]-The owner's acquiescence in the public's use of the property, under circumstances indicating that the use was not permissive.

*Wright v. Town of Matthews*, 177 N.C. App. 1, 14, 627 S.E.2d 650, 660 (2006) (citations and quotation marks omitted).

Just as for an express dedication, the "intent of the owner" is the most important consideration as to implied dedication. In Plaintiffs' claims as to express dedication, they have argued that it was the intent of *Pack*, as the property owner who conveyed the courthouse property to the County, to dedicate the courthouse property for public use as a location for the *courthouse and county offices*.[15] There is absolutely no evidence that Pack ever had any intent to dedicate the courthouse property for use as a *public park* which is independent of a courthouse or county offices. Thus, we must conclude that Plaintiffs are contending that it was the intent of the *County*, as the owner of the courthouse property since 24 July 1901, to dedicate the courthouse property, or at least that portion which was used for the City-County Plaza, for use as a public park. As an implied dedication requires both an offer for public use and "acceptance of this offer by a proper public authority," Plaintiffs' theory of implied dedication would require the County to make an offer of dedication to itself and to accept its own offer. *See Elm Land Co.*, 163 N.C. App. at 265, 593 S.E.2d at 137.

---

15. Although we recognize that it is possible for a party to plead claims in the alternative, even including claims which may be contradictory to one another, Plaintiffs have not made alternative claims in this case but have alleged that the courthouse property was dedicated as *both* "a park and as a site for a Court House and County Offices." As we realize that the public grounds surrounding a courthouse might be used in much the same manner as a public park, we do not necessarily consider these allegations completely contradictory.

Even if we accept as true the Plaintiffs' allegations that the "[courthouse property] has been used for public purposes—primarily as a public park—for the last 107 years," a county is not bound to continue to use real property in a certain way just because it has used the property in that manner for any particular period of time. All real property owned by a county is by definition "dedicated to public use" simply by virtue of the fact that it is owned by a county. However, municipalities and counties have statutory authority to change the use of real property or to "sell or dispose of real . . . property, without regard to the method or purpose of its acquisition or to its intended or actual governmental or other prior use." N.C. Gen. Stat. § 160A-265 (2007). Our Supreme Court has described the limitations upon a city or county in changing the use of public property as follows:

> Where property is dedicated or set apart without restriction merely for public uses, the municipal authorities may determine for what use it is appropriate and shall be used, and, *if not irrevocably dedicated or appropriated by them to any particular public use*, its use may be changed as the public convenience and necessities require. Where, however, property is purchased for the declared purpose of use as a public park or dedicated by gift for that purpose, or if acquired without any specific intent as to its use, has thereafter been *definitely set aside for the sole and specific use as a public park*, the governing authorities of a municipality may not, without legislative authority, dispose of the property or put it to an entirely different and inconsistent use.
>
> . . . .
>
> A city may own property for which it has no present use, and permit it to be used temporarily for any legitimate purpose, or property devoted to a specific use may become unsuited for that purpose and a change of use become necessary, and it cannot be contended that every purpose for which it is thus used fixes its status irrevocably. If so, a city dump would remain a dump forever, though by reason of abutting development it became highly desirable for other purposes.

*Wishart v. City of Lumberton*, 254 N.C. 94, 96-97, 118 S.E.2d 35, 36-37 (1961) (internal citations, quotation marks omitted and emphasis added). Therefore, in order to avoid summary judgment dismissing their claim of implied dedication of the courthouse property to use as a public park, the Plaintiffs would have to show that the courthouse property was either (a) "irrevocably dedicated or appro-

priated" for use as a public park; or (b) "purchased for the declared purpose of use as a public park or dedicated by gift for that purpose;" or (c)"acquired without any specific intent as to its use [but was] thereafter . . . definitely set aside for the sole and specific use as a public park[.]" *Id.* We have already rejected above Plaintiffs' contentions that the courthouse property was expressly dedicated for a particular public use or that it was acquired for the "declared purpose" of a public park. *Id.* Plaintiffs have not forecast any evidence whatsoever that the courthouse property was "definitely set aside for the sole and specific use as a public park." *Id.* We note that Plaintiffs' brief recites the history of the use of the courthouse property since 1903, including a contention that

> the [courthouse] property and the [Old County Jail Lot] were, in 1929, the subject matter of a contract between the City of Asheville and County of Buncombe to construct what is now known as City-County Plaza. In addition, on August 14, 2001, Buncombe County entered into an agreement with the Pack Square Conservancy to renovate City-County Plaza (including [the courthouse property] and [the Old County Jail Lot]) as a park.

However, the record on appeal does not include any contracts or agreements by and between the County, the City of Asheville, or Pack Square Conservancy, nor was such information presented to the trial court.

> Pursuant to the North Carolina Rules of Appellate Procedure, our review is limited to what appears in the record on appeal. N.C. R. App. P. 9(a) (2007) ("review is solely upon the record on appeal, the verbatim transcript of proceedings, if one is designated, constituted in accordance with this Rule 9, and any items filed with the record on appeal pursuant to Rule 9(c) and 9(d)).

*Estate of Redden ex rel. Morley v. Redden,* —— N.C. App. ——, ——, 670 S.E.2d 586, 589 (2009). Thus, based upon the record before us, Plaintiffs have not shown any evidence that the courthouse property or the Old County Jail Lot were "definitely set aside for the sole and specific use as a public park." *Wishart,* 254 N.C. at 96, 118 S.E.2d at 36.

Counties are subject to specific requirements and limitations governing the sale of public property, *See* N.C. Gen. Stat. § 160A-266 et seq., but Plaintiffs here have not alleged that County did not follow

proper statutory procedures in its sale of the Old County Jail Lot to Black Dog Realty. In fact, the deed to defendant Black Dog Realty indicates that the Board adopted a resolution to open the bidding process to sell the Old County Jail Lot, received bids, and accepted Black Dog Realty's bid which was the "last and highest bid." We therefore hold that the County, as a governmental entity, did not impliedly dedicate its own real property irrevocably to use as a public park solely by its use of a portion of the real property as a park for a particular period of time. Accordingly, the trial court erred by granting summary judgment in favor of Plaintiffs and should have granted summary judgment in favor of Defendants as to implied dedication.

## IX. Conclusion

We affirm the trial court's denial of Defendants' motion to dismiss for want of standing and the trial court's order denying Defendants' motion for written findings of fact and conclusions of law. Summary judgment in favor of Plaintiffs on the basis of express or implied dedication of the courthouse property and the Old County Jail Lot to use as a site for a courthouse or county offices or a public park was in error and is reversed.

As there are no genuine issues of material fact and defendant Black Dog Realty is entitled to judgment as a matter of law quieting title to the Old County Jail Lot, the trial court should have granted summary judgment to Black Dog Realty as to its action to quiet title, and should have granted summary judgment in favor of both Defendants by way of declaratory judgment on all substantive issues. We therefore affirm in part, reverse in part, and remand for the entry of judgment consistent with this opinion.

Affirmed in part, Reversed in part and Remanded.

Chief Judge MARTIN and Judge BEASLEY concur.